### EMILY MERRIAM *vs.* JOHN HASSAM.
### SAME *vs.* JEREMIAH ALLEN & others.

If a trustee sells the trust estate to a purchaser for value, with warranty, and without any intimation, in the deed of conveyance, of a subsisting trust, and the vendee enters and occupies the estate, doing no act which recognizes in any manner the existence of the trust, and there is no fraud or concealment, and the *cestui que trust* is under no disability, the possession must be regarded as adverse both to the trustee and the *cestui que trust*, and the time which would bar the legal right is equally effectual to bar the equitable right.

Two bills in equity, filed on the 15th of March, 1866, to enforce a trust in certain real estate against the administrator and heirs of Andrew J. Allen, under a deed (hereinafter copied) executed on the 18th of July, 1811, by the plaintiff's mother, Janet Clark, afterwards Janet Flagg. The defendants denied any trust; alleged that if any trust ever existed, it had been terminated ; and pleaded the statute of limitations. At the

hearing upon bills, answers, replications and proofs, the following case appeared:

Janet Clark was married to John Clark before 1803, and had by him one child, the plaintiff, born on the 4th of May, 1804. John Clark died in 1805, and by his will, made in 1805 and duly proved, appointed his wife executrix, and disposed of his property as follows: " My debts I order to be discharged with all convenient speed; which being done, I hereby give and bequeath all the residue of my estate, whether real or personal, unto my wife Janet Clark during her natural life, to her sole use, benefit and improvement. At the decease of my said wife Janet, I give and bequeath all my estate, as before expressed, whether real, personal, or mixed, to our only daughter Emily, to her heirs and assigns forever. But should our said daughter decease before her mother, I then give and bequeath to my said wife Janet, to her heirs and assigns forever, my whole estate, as before mentioned, of what name or description soever." Janet Clark was married to Henry Flagg in 1811. The plaintiff was married to James C. Merriam in 1829, and became a widow in 1832. In 1806, Janet Clark acquired by deed from her brother, John Mackay, an absolute title in fee in an undivided half of certain land in Boston, which had formerly belonged to her father, Alexander Mackay, and had been devised under his will, made in 1801, to his widow for life and remainder to his children, and in which her first husband, John Clark, never had any interest; and on the 18th of July, 1811, just before her second marriage to Henry Flagg, executed the following deed:

" Whereas I, Janet Clark of Boston in the county of Suffolk and Commonwealth of Massachusetts, widow of John Clark, late of Weston in the county of Middlesex, gentleman, deceased, being about to form a connection, which by unforeseen causes may prove unfortunate, and aware of the uncertainty of my future prosperity, I deem it my duty so to dispose of my property as that I may secure to myself maintenance, and to place it in such a situation that my daughter, Emily Clark, may not be deprived of such share and portion of my estate as I have received from the estate of my late husband, her father.

" Now know all men that I, Janet Clark, confiding in the affection, honor and integrity of my brother, John Mackay, (he being guardian of my said daughter,) do hereby give, grant, convey, transfer, assign and make over to said Mackay, in consideration of the premises, all the real estate of which I am possessed, or in any way interested; also all the personal and mixed property which now belongs to me, or which I may or can claim by virtue of the last wills and testaments of my said husband and my late father, Alexander Mackay, trusting in the just and proper application of all the income and profits of my said property, either to relieve my necessities, or to the use and benefit of my said daughter. And I do hereby authorize and empower said Mackay to demand, recover and receive of and from all and every person or persons all and singular sum and sums of money, debts, effects and things whatsoever, and wheresoever they shall and may be found, due, owing or payable unto me, or which would hereafter have become due and payable unto me by virtue of said wills:

" To have and to hold the same to said Mackay, as fully and effectually, and to all intents and purposes, as if my said property and estates had been herein particularly described and set forth."

On the 9th of May, 1818, John Mackay, for the nominal consideration of $100, conveyed all the estate conveyed by said Janet Clark to him to Ruth Mackay, the widow of Alexander Mackay, " her heirs and assigns forever, to her use, benefit and behoof, according to the intention of the original conveyance " from said Janet to him. On the 24th of July, 1823, Ruth Mackay executed a deed to said Janet, reciting said original conveyance, and that John Mackay had conveyed the same estate to her " to be by me held in trust for the same uses and purposes for which the same were conveyed to him, the said John, as aforesaid," and then proceeding as follows : " And whereas the said Janet is desirous of holding said estate in the same way and manner she held the same before the conveyance by her, as aforesaid, to the said John; and I, the said Ruth Mackay, being willing to relinquish any and all right, title and estate in the premises aforesaid, which I derived from said deed

of John Mackay to me, above referred to, if the release thereof can be made without prejudice to me, the said Ruth, or to my representatives; therefore, in consideration of the premises, and the sum of five dollars, to me paid by the said Janet Flagg, the receipt whereof I do hereby acknowledge, do hereby give, grant, bargain, sell and convey to the said Janet Flagg, her heirs and assigns forever, all the estate conveyed and described in and by the deeds aforesaid from the said Janet to the said John Mackay, and from the said John Mackay to me. To have and to hold the said premises to her, the said Janet Flagg, her heirs and assigns forever, in as full and ample manner as I could or ought to hold and possess the same by virtue of the deed from said John Mackay to me, above referred to, and not otherwise; and subject to all leases made by me thereof which are now subsisting; the rents accruing thereon, however, to be paid to the said Janet."

On the same day, John Mackay also executed a deed of quitclaim of this estate to said Janet. And on the 2d of April, 1824, she and her husband, Henry Flagg, in her right, in consideration of the sum of $15,000, to them actually paid, conveyed one undivided half of this land by warranty deed subject to the life estate of Ruth Mackay, to Andrew J. Allen. April 7th, 1824, Ruth Mackay released to Allen her life estate in this land.

The income of this undivided half was received by John Mackay and by Ruth Mackay for the terms for which they respectively held it under the deeds to them for the use of said Janet; and John Mackay failed in business without having accounted for all of it.

Ruth Mackay conveyed the other undivided half of this land by warranty deed, in consideration of a like sum of $15,000, to said Allen, on the 1st of April, 1824, and died in 1832.

All the deeds above mentioned were duly acknowledged and recorded.

Said Allen entered on the land under the deeds to him, and continued in undisputed possession and enjoyment thereof, without any claim by any person, until his death in 1864, when his real estate descended to his heirs, the defendants in the

second suit; and Hassam, the defendant in the first suit, was appointed administrator of his estate. The plaintiff did not know of the deeds of 1811, 1818 and 1823, until after Andrew J Allen's death, and made demands upon these defendants before bringing these suits.

The cases were reserved, by *Gray*, J., for the determination of the full court.

*C. M. Ellis*, for the plaintiff, cited, upon the point decided, *Farnam* v. *Brooks*, 9 Pick. 242; *Hemenway* v. *Gates*, 5 Pick. 321; *Zeller* v. *Eckert*, 4 How. 289; Hill on Trustees, 388–392.

*J. G. Abbott & D. H. Mason*, for the defendant, in addition to cases cited in the opinion, cited, upon the point decided, 2 Story on Eq. § 1520 a, and cases there cited; *Elmendorf* v. *Taylor*, 10 Wheat. 168; *Cholmondeley* v. *Clinton*, 2 Jac. & Walk. 1; *Baker* v. *Atlas Bank*, 9 Met. 182; *Robinson* v. *Hook*, 4 Mason, 139; *Portlock* v. *Gardner*, 1 Hare, 601; *Michoud* v. *Girod*, 4 How. 561; *Prevost* v. *Gratz*, 6 Wheat. 481; *Attorney General* v. *Fishmongers' Co.* 5 Myl. & Cr. 16; *Boone* v. *Chiles*, 10 Pet. 223; *Smilie* v. *Biffle*, 2 Penn. State R. 52; *Bond* v. *Hopkins*, 1 Sch. & Lef. 429; *Medlicott* v. *O'Donel*, 1 Ball & Beat. 156; *Petre* v. *Petre*, 1 Drewry, 371; *Attorney General* v. *Payne*, 27 Beav. 168; *Magdalen College* v. *Attorney General*, 6 H. L. Cas. 189.

Hoar, J. The land upon which the plaintiff seeks to establish a trust in her favor was in 1806 the property of her mother, Mrs. Clark, subject to an estate for life in Mrs. Ruth Mackay. Mrs. Clark's title was derived from her father and brother; and her husband, the plaintiff's father, had no interest in the estate. In contemplation of a second marriage, she made to her brother the deed of trust of July 18, 1811, which is the foundation of the plaintiff's claim. That deed recited, as the grantor's object and purpose, "so to dispose of my property as that I may secure to myself maintenance, and to place it in such a situation that my daughter, Emily Clark, may not be deprived of such share and portion of my estate as I have received from the estate of my late husband, her father;" and "confiding in the affection, honor and integrity" of the grantee, conveyed to him all her real and

personal estate, " trusting in the just and proper application of all the income and profits of my said property, either to relieve my necessities, or to the use and benefit of my said daughter."

Assuming that this instrument created a technical trust, it is obvious that it was very inartificial, and such as to present difficulties of construction.   Whether the trustee took an estate in fee, or for his own life, or for the life of the grantor, or for her married life, or the joint lives of herself and her daughter; whether the principal or only the income of the property put in trust was made subject to the trust; whether in construing the word " necessities " it should be held to have the same force and effect as the word " maintenance," and whether either, under the circumstances of the case, might not be taken to include some-thing more than a supply of the merest physical wants, and even extend to any proper uses of money by a person in Mrs. Clark's condition in life; and finally, whether the trust for the daughter would include more than the property which came from her father, and whether, therefore, it would include the land now in controversy ; are all questions which, upon the language of the deed, admit of discussion, and some of them would deserve the serious consideration of the court, if the decision of the case depended on them.

But the statute of limitations furnishes a complete and decisive bar to the suit.   The plaintiff became of age in May, 1825.. She was married in 1829, and became a widow in 1832.   For thirty-four years before the filing of the bill, she had been under no disability to ascertain and vindicate her rights.   The life estate of Mrs. Ruth Mackay terminated in 1832.   John Mackay, the original trustee, conveyed the estate to Ruth Mackay, to be held by her upon the same trusts on which he had held it in 1818 ; and Ruth Mackay reconveyed to Mrs. Flagg, (formerly Mrs. Clark,) in 1823, by a deed which recited that the grantee was " desirous of holding said estate in the same way and man-ner she held the same before the conveyance by her."   Mrs. Flagg took her title, of course, with full notice of the trust, whatever it was ; and the deed from Ruth Mackay was merely a quitclaim.   But the recital showed the intention to put the

estate into her hands to be held in the same manner as it was held before the trust was created.

When, therefore, in 1824, Mrs. Flagg and her husband joined in the conveyance of the land now in question to Andrew J. Allen, by a deed with full covenants of warranty, and for a full consideration, and he proceeded to enter upon and hold the same without any claim by or on behalf of any person against him, and continued in the undisputed sole possession and enjoyment thereof till his death in 1864, applying the rents and income to his own use, we think it very clear that his title and possession were adverse to both trustee and *cestui que trust.* From the death of Ruth Mackay in 1832, the right of the plaintiff was as complete as it is now, or has been at any time intervening. She became a widow in that year, and no disability has existed since. It is agreed as a fact that she had no actual knowledge of the creation or existence of a trust in her favor. But while this would be an answer to a defence based upon laches or acquiescence merely, we cannot find in it a sufficient objection to the operation of the limitation. The deed which created the trust was upon record, and she had the means of ascertaining her rights under it by the use of due diligence. She now claims under that recorded deed, and the registry gave her the same notice that it gave to Mr. Allen. If she seeks to charge him as trustee because he purchased the estate with notice of the trust, the constructive notice was the same to all who claim under the same instrument.

The rule is stated generally in the text-books, and is found in many adjudged cases, that no lapse of time is a bar to a direct trust; and it is undoubtedly true, if taken with the proper qualifications. The possession of the trustee not being adverse to the *cestui que trust,* as between them there is no limitation of time, unless there is a clear repudiation of the trust, brought home to the party so as to require him to act as upon a clearly asserted adverse title. *Baker* v. *Whiting,* 3 Sumner, 486. *Kane* v. *Bloodgood,* 7 Johns. Ch. 90. But where the trustee sells the trust estate to a purchaser for value, with warranty, and without any intimation, in the deed of conveyance, of a subsisting trust

and the vendee enters and occupies the estate, doing no act which recognizes in any manner the existence of the trust; and there is no fraud or concealment; and the *cestui que trust* is under no disability; the possession must be regarded as adverse both to the trustee and the *cestui que trust;* and the time which would bar the legal right is equally effectual to bar the equitable right. 2 Sugden on Vend. 610. *Attorney General* v. *Proprietors of Federal Street Meeting-House*, 3 Gray, 1.

*Bills dismissed with costs.*