BENJIE STETSON, administrator, *vs.* JONATHAN W. FRENCH,
executor
(and a companion case [1]).

Norfolk.   February 3, 1947. — April 5, 1947.

Present: FIELD, C.J., QUA, RONAN, WILKINS, & SPALDING, JJ.

*Limitations, Statute of.   Fraud.   Fiduciary.   Pleading, Civil*, Declaration.   *Practice, Civil*, Exceptions: what questions open.

The plaintiff in an action need not include in his declaration allegations in anticipation of the pleading of the statute of limitations by the defendant.

A capable and successful farmer and cattle dealer, in his relation to younger, illiterate brothers employed by him in a subordinate capacity and having confidence in him, one of them somewhat deficient mentally, might properly be found to have been a fiduciary under a duty to disclose to them his failure to deal properly with portions of their wages withheld by him pursuant to an agreement with them.

Fraudulent concealment of causes of action and consequent tolling of the statute of limitations might properly be found where an employer, having a fiduciary relation to employees respecting wages withheld from them under an agreement to deposit such wages in a bank for them, failed to reveal to them that he was not depositing such wages and also made statements to them indicating that he was depositing them, and the employees, relying on him without investigating his dealings with such wages, did not learn until after his death of his failure so to deposit.

Exceptions to the charge to the jury were not open in this court on a bill of exceptions stating in effect that the sole issue presented was the sufficiency of the allegations and evidence to show a fraudulent concealment of the cause of action which would toll the statute of limitations.

TWO ACTIONS OF CONTRACT.   Writs in the Superior Court dated April 7, 1943.

The actions were tried before *O'Connell*, J.

*S. T. Abele*, (*G. W. Abele* with him,) for the defendant.

*C. S. Williams*, (*J. M. J. Hurley* with him,) for the plaintiffs.

---

[1] The companion case is that of Charles E. Stetson against the same defendant.

Qua, J. These actions were originally brought by Jabez Stetson and Charles E. Stetson, brothers, to recover from the estate of a third brother, Lincoln Stetson, balances alleged to be due for wages earned by them respectively over a long period of years during which they were employed by Lincoln as farm laborers and cattle drovers in connection with his farms in Randolph and Abington.[2] The writs were dated April 7, 1943. Jabez died during the pendency of the actions, and his action is now prosecuted by his administrator. The defendant set up the general statute of limitations in each case. There were verdicts for the plaintiffs, and the defendant prosecutes exceptions.

The consolidated bill of exceptions states that the sole issue presented "is whether the allegations of fraud . . . and the evidence introduced by the plaintiffs in support of these allegations was such as to avoid the operation of the statute of limitations." We address ourselves to the issue so defined.

From statements of facts in the bill of exceptions, findings of an auditor not contradicted at the trial, and evidence at the trial the following facts are established or could be found: For more than fifty years the defendant's testator, Lincoln Stetson, operated one or more farms and engaged in the business of trading cattle. He was a successful business man, employing during the greater part of the time "a large number of men." Jabez and Charles were respectively ten and fourteen years younger than Lincoln. Neither Jabez nor Charles could read or write, and Charles "was of limited mentality" and was "a farm hand of mediocre value." Lincoln employed Jabez in 1901 and Charles in 1903. Both worked for Lincoln until his death in 1941. Jabez was to receive $12 a week "and found" (changed to $20 a week in 1920), and $5 additional for each trip to Brighton with cattle. Charles was to receive $18 a month "and found." Early in the employment of each of his brothers Lincoln Stetson began withholding a portion of the wages of each upon an agreement with each to deposit

---

[2] Certain sums not due for wages were originally included in the declarations in counts that have since been disposed of.

the sums withheld for his benefit in a bank in Randolph. This practice could be found to have continued with the assent of Jabez and Charles during most of the time of their employment and until substantial sums had been withheld from the pay of each. Lincoln did not in fact make any such deposits, as Jabez and Charles learned for the first time after Lincoln's death. These actions are prosecuted to recover as unpaid wages the sums so withheld and not deposited as agreed.

There was evidence from which these additional facts could be found: On one occasion about 1907 or 1908 when Jabez asked Lincoln for money, Lincoln replied, "I'm putting that money away and taking it out each week and when the house is paid for you own it." The house referred to was one owned by Lincoln and occupied by Jabez, which Jabez contended was to be conveyed to him when paid for out of withheld wages. On another occasion Lincoln told Jabez that Lincoln had the deeds to the house and would take care of them until the house was paid for. On another occasion Lincoln said to Jabez, "you will never have to worry. I am taking care of you fellows." At one time when Lincoln gave Charles fifty cents Lincoln said to the witness, "I will take care of his money. You see he don't know how to take care of his own money and I will take care of it for him." The plaintiff Charles Stetson testified in his own behalf. His appearance "warranted the inference that while strong physically, he was of limited mentality." He testified that Lincoln paid him fifty cents or $1 a week of his wages and told him that he was putting the rest of his money in a Randolph bank. There was further testimony that Lincoln had said to different witnesses that he was keeping part of Jabez's wages to pay for the house; that he was putting part of Charles's pay away in the bank to take care of him when he got old; and that he was putting away in a bank money withheld from the wages of Jabez and Charles "for their old age when they could not work."

With these facts and this evidence in mind, we turn to the application of the statute of limitations. Each time, weekly and monthly, when wages were withheld by Lincoln

Stetson and not deposited as agreed, a cause of action arose in favor of Jabez or Charles. In each instance the general statute of limitations would interpose its bar at the end of six years (G. L. [Ter. Ed.] c. 260, § 2) unless the cause of action was fraudulently concealed by Lincoln within the provisions of § 12. That section reads, "If a person liable to a personal action fraudulently conceals the cause of such action from the knowledge of the person entitled to bring it, the period prior to the discovery of his cause of action by the person so entitled shall be excluded in determining the time limited for the commencement of the action." We need expend no effort on the question whether the allegations of fraudulent concealment in the declarations were sufficient, since the plaintiffs were not required to allege anything in their declarations in anticipation of the pleading of the statute of limitations by the defendant. G. L. (Ter. Ed.) c. 231, §§ 28, 147, forms 28 and 46. *Hodgdon* v. *Haverhill*, 193 Mass. 327, 330. *Aisenberg* v. *Royal Ins. Co. Ltd.* 266 Mass. 543, 546. *Gallo* v. *Foley*, 299 Mass. 1, 4. The real question is whether the evidence would warrant a finding by the jury that Lincoln Stetson fraudulently concealed the plaintiffs' causes of action until within six years of his death. We think that it would.

It is true that a cause of action is not concealed from one who has knowledge of the facts that create it. *Tabolsky* v. *Crandon*, 259 Mass. 32. *Maloney* v. *Brackett*, 275 Mass. 479, 484. But though Jabez and Charles had knowledge that wages were payable at the stated intervals and that portions of them were being withheld, they had no knowledge that Lincoln's obligation to pay the portions withheld into a bank had not been discharged as agreed. They were therefore ignorant that causes of action existed for the unpaid portions. It is also true that ordinarily mere silence is not a fraudulent concealment, and that there must be something in the nature of positive acts with intent to deceive. *Manufacturers' National Bank* v. *Perry*, 144 Mass. 313. *O'Brien* v. *McSherry*, 222 Mass. 147. *Connelly* v. *Bartlett*, 286 Mass. 311, 318. *Norwood Trust Co.* v. *Twenty-Four Federal Street Corp.* 295 Mass. 234, 237. But this statement is subject to

the qualification applicable to fraud in other connections that mere failure to reveal may be fraudulent where there is a duty to reveal. *Atlantic National Bank* v. *Harris*, 118 Mass. 147, 153. *Leslie* v. *Jaquith*, 201 Mass. 242, 243. *Old Dominion Copper Mining & Smelting Co.* v. *Bigelow*, 203 Mass. 159, 201. *Jekshewitz* v. *Groswald*, 265 Mass. 413, 417. *Maloney* v. *Brackett*, 275 Mass. 479, 484. *Connelly* v. *Bartlett*, 286 Mass. 311, 318. Williston on Contracts (Rev. ed.) § 2018, at page 5672. In the instant cases the relation of Lincoln Stetson to his two younger brothers could be found on the evidence to have been a fiduciary relation. He was a capable man of affairs and of property. They were illiterate, and one of them was somewhat deficient mentally. Both of them were employed by him the greater part of their lives in subordinate capacities in his establishment. They agreed that he should handle their money and had confidence in him that he would do what he agreed to do with it. If in fact he had segregated the unpaid wages in his hands, he would have held the amounts in trust. *Moore* v. *O'Hare*, 224 Mass. 283, 286. It could be found that he occupied toward his brothers a position of trust and confidence. *Hawkes* v. *Lackey*, 207 Mass. 424, 431–433. *Schmidt* v. *Schmidt*, 216 Mass. 572. *Reed* v. *A. E. Little Co.* 256 Mass. 442, 448–450. *Akin* v. *Warner*, 318 Mass. 669. He would in that case be subject at all times to the duty of full disclosure. In this state of affairs it could be found that when Lincoln Stetson, after having promised to deposit the withheld wages in a bank, continued week after week and month after month to withhold, without depositing, wages which he had a right to withhold only upon condition that he should deposit them, and when in addition, on certain occasions, he made statements to his brothers indicating that he was depositing them, he was continuing fraudulently to conceal the several causes of action as they arose against him. And in the circumstances it could be found that Jabez and Charles were justified in relying upon Lincoln without making independent investigations of their own. *Thomson* v. *Pentecost*, 206 Mass. 505. *Mignault* v. *Goldman*, 234 Mass. 205, 208, 209. *Forman* v. *Hamilburg*, 300 Mass. 138, 141.

Whether the same result would be reached if the element of a fiduciary obligation were lacking need not be decided.

The defendant argues that there was error in the instructions to the jury. We think exceptions to the charge are not open in view of the limitation of the issues contained in the bill of exceptions itself and quoted early in this opinion. We do not imply that there would be any merit in these exceptions if they were open.

*Exceptions overruled.*