**FEDERAL INSURANCE COMPANY,**
Plaintiff,

v.

**Harry SUMMERS, Defendant.**

Civ. A. No. 67–145.

United States District Court,
D. Massachusetts.

Sept. 30, 1970.

———◆———

James C. Heigham, Choate, Hall & Stewart, Boston, Mass., for plaintiff.

James Freeley, Jr., Feeney & Malone, Boston, Mass., for defendant.

## OPINION

JULIAN, District Judge.

After a jury verdict for plaintiff the case is before the Court on the defense of the statute of limitations. The parties stipulated that the issue is to be resolved by the Court, and have waived jury trial as to any factual questions.

### Findings of Fact and Conclusions of Law

Defendant Summers ordered 2,000 shares of General Plywood common stock through the brokerage house of Harris Upham & Co. in late 1957. A stock certificate for 2,000 shares (No. 2932) was mailed to the defendant from Harris Upham & Co.'s New York office on December 31, 1957. It was received by Summers prior to January 16, 1958. On January 16, 1958, Summers executed a Proof of Loss (Stipulation, Exhibit 1) and caused it to be delivered through Harris Upham & Co. to the plaintiff, Federal Insurance Company. In the Proof of Loss Summers falsely represented to the plaintiff that he had not received certificate No. 2932 and that it was lost. At the time he executed the

Proof of Loss and caused it to be delivered to the plaintiff, Summers knew that he had received the certificate, that it was in his possession, and that it was not lost. Summers made the representations in the Proof of Loss knowing them to be false and with the fraudulent intent to mislead and induce the plaintiff to issue the bond of indemnity required for the issuance of a replacement certificate by General Plywood. The plaintiff relied on the Proof of Loss and the defendant's false representations therein contained and on January 27, 1958, issued the requisite bond of indemnity,— No. F–5020 (Stip., Exh. 1). On or about the same date, Harris Upham caused application to be made for the issuance of a replacement certificate.

The application was sent to General Plywood's transfer agent, the Kentucky Trust Company, together with Federal's bond No. F–5020 and a copy of the defendant's Proof of Loss. The transfer agent thereupon issued a replacement certificate.

In late 1958 or 1959, Summers pledged certificate No. 2932 as security for a loan at the then Rockland-Atlas National Bank. He later changed bankers and in December, 1960, pledged the same certificate to the City Bank & Trust Co.

The certificate remained pledged to the City Bank & Trust Co. until September, 1966. During this period it was physically in the vaults of that bank. A pledge of stock normally does not come to the attention of the transfer agent.

Summers' purpose in keeping the certificate pledged to the banks was to conceal its existence more effectively and safely, thus minimizing the risk that his fraud might be discovered while at the same time utilizing the certificate to his own financial advantage.

On or about August 30, 1966, certificate No. 2932 was sold through the Boston office of E. F. Hutton & Co., a brokerage house. Physical delivery of the certificate to Hutton, together with a stock power signed by Summers, was made September 9, 1966. On the same date Hutton paid $25,524.23 to the City Bank & Trust Co. for the account of Summers. This sum was used to reduce Summers' loan balance at that bank.

By transmittal dated September 14, 1966, Hutton presented certificate No. 2932 to the Kentucky Trust Company for transfer. Kentucky Trust replied on September 16, 1966, stating that this certificate "was replaced under an Indemnity Bond in 1958, and accordingly, cannot be transferred."

On October 17, 1966, Kentucky Trust wrote Federal, enclosing a copy of the bond and informing plaintiff that certificate No. 2932 had been presented for transfer by Hutton.

On October 20, 1966, Federal replied, stating that it was "having the matter investigated" and that "(w)e expect that the stockholder [Hutton] will release the certificate to enable its cancellation flat."

On November 3, 1966, Federal paid Hutton $25,524.23 under the provisions of the indemnity bond. Four days later, certificate No. 2932 was cancelled by the transfer agent.

This action was commenced on February 15, 1967.

■ This is a diversity action. The only count now before the Court is Count II. As stated by the Court of Appeals, this count is for "Misrepresentation" (Federal Insurance Co. v. Summers, 1968, 1 Cir., 403 F.2d 971, 975) and sounds in tort.

The applicable statute is G.L. c. 260, § 2A, the general Massachusetts tort statute of limitations. This provides:

"Except as otherwise provided, actions of tort * * * shall be commenced only within two years next after the cause of action accrues."

■ This Court holds that Federal's cause of action did not accrue until November, 1966, when Federal first suffered a loss on its indemnity bond. It suffered the loss on November 3, 1966, when it delivered its draft for $25,524.-23 to Hutton. *See* Hall v. Thayer, 12 Metc. 130; Wolverine Insurance Co. v. Tower Iron Works, Inc., 1966, 1 Cir.,

370 F.2d 700. Defendant, relying on Connolly v. Bartlett, 1934, 286 Mass. 311, 190 N.E. 799, maintains that the cause of action accrued in 1958 when the misrepresentations were made. The Connolly court did state that a cause of action in tort for deceit accrues "at the time the defendants made the representations which the plaintiff testified he relied upon * * *." *Id.* at 317, 190 N.E. at 802. However, the court also held that an essential element in a cause of action for deceit is damage; there is no wrong without damage. *Id.* at 315, 190 N.E. 799. On the facts of this case Federal suffered no harm until 1966 when it was called upon for indemnification under the indemnity bond. This produced the final element of the cause of action, namely, damage, and Federal's cause of action against Summers thereupon accrued. Federal commenced its action well within the two-year limitation.

■ If it be assumed Federal's cause of action accrued in 1958, as asserted by Summers, the statute of limitations was tolled until 1966 by Summers' fraudulent acts of concealment.

■ G.L. c. 260, § 12 provides as follows with respect to fraudulently concealed causes of action:

"If a person liable to a personal action fraudulently conceals the cause of such action from the knowledge of the person entitled to bring it, the period prior to the discovery of his cause of action by the person so entitled shall be excluded in determining the time limited for the commencement of the action."

The tolling statute requires some affirmative act of concealment and mere silence is not enough. See Janigan v. Taylor, 1965, 1 Cir., 344 F.2d 781, 783–784, and cases cited. In the present case Summers did far more than remain silent. He deliberately and fraudulently withheld certificate No. 2932 from the public view and public market places for more than eight years. As described in more detail above, he did this by pledging the certificate first to Rockland-Atlas and later to City Bank & Trust. He knew that pledged securities normally remain in the vaults of the bank to which they are pledged as collateral. They are brought out of the vaults when they are redeemed, sold, or substituted, —occurrences usually controlled, as in this case, by the pledgor himself.

■ Additionally, if it be assumed that Federal's cause of action accrued in 1958, the statute of limitations was tolled until 1966 by Summers' continuing duty to account to the plaintiff for certificate No. 2932.

■ Fraudulent concealment is not the only basis for invoking G.L. c. 260, § 12. As stated by the Court of Appeals in Burns v. Massachusetts Inst. of Technology, 1968, 1 Cir., 394 F.2d 416, 419:

"* * * Breach of the resulting duty of disclosure is a substitute for the active fraud normally required to constitute fraudulent concealment within the Massachusetts tolling statutes. Mass.G.L. c. 260, § 12. Stetson v. French, 1947, 321 Mass. 195, 72 N.E.2d 410."

Such a continuing duty of disclosure exists in the present case. Paragraph 4 of the Proof of Loss executed by Summers provides:

"4. Deponent agrees that if the securities should ever come into deponent's hands, custody or power, deponent will immediately notify the sender [Harris Upham] and (if deponent has received new securities in the meantime) will surrender the original securities to the Insurance Company."

The Court is of the opinion that this promise by Summers, which was relied upon by the plaintiff, operated to impose upon Summers the continuing duty to disclose the existence of the certificate to the plaintiff and to cause it to be surrendered to the plaintiff.

The Court concludes that the plaintiff's claim is not barred by the statute of limitations.

It is ordered that judgment be entered on the verdict.