USCA1 Opinion

 

 United States Court of Appeals
 For the First Circuit

No. 98-1301

 GEO. KNIGHT & COMPANY, INC.,

 Plaintiff, Appellant,

 v.

 WATSON WYATT & COMPANY,

 Defendant, Appellee.

 APPEAL FROM THE UNITED STATES DISTRICT COURT

 FOR THE DISTRICT OF MASSACHUSETTS

 [Hon. Richard G. Stearns, U.S. District Judge]

 Before

 Boudin, Lynch, and Lipez, Circuit Judges.
 
 

 Christine A. Burt for appellant.
 Peter A. Biagetti, with whom Joseph P. Messina, Laurence
A. Schoen, and Paul A. Meyer were on brief, for appellee.

February 22, 1999

 
 

 LIPEZ, Circuit Judge. Plaintiff-appellant Geo. Knight &
Company, Inc. ("Knight") challenges the district court's entry of
a summary judgment in favor of Watson Wyatt & Co. ("Watson Wyatt"),
an international human resources and employee benefits consulting
firm which provided actuarial services to Knight for several
decades beginning in the 1960s. The court held that Knight's
complaint, which alleges a breach of a fiduciary duty, professional
negligence, and violations of Massachusetts' unfair trade practices
statute, Mass. Gen. Laws ch. 93A, is barred by the applicable three
and four year statutes of limitations. Knight argues that the
district court erred in its ruling that Knight's claims are not
subject to equitable tolling and thus are untimely. We disagree
and affirm the judgment. 
 I. 
 The following facts are not disputed. In 1966 Geo.
Knight & Company, Inc., a manufacturing company based in
Massachusetts, established the George Knight Local No. 47
Retirement Plan (the "Plan") for the benefit of its eligible union
employees. For more than twenty years, Knight retained Watson
Wyatt, a Delaware corporation with a principal place of business in
Maryland, to provide actuarial services relating to the Plan. As
part of this provision of actuarial services, Watson Wyatt
completed annual actuarial valuations reports ("AVRs") for the
Plan, as required by ERISA, 29 U.S.C. 1001-1461, and prepared
necessary reports and filings for Knight's review, signature, and
filing on behalf of the Plan, as required by ERISA and the Internal
Revenue Code. During the course of their business relationship,
Watson Wyatt also prepared amendments to the Plan to comply with
changes in ERISA and the Internal Revenue Code and to ensure that
Knight's contributions to the Plan were tax deductible. 
 In March 1990 Watson Wyatt advised Knight by letter that
the Internal Revenue Code had been changed to require that each of
the Plan's actuarial assumptions be reasonable based on the Plan's
experience. Watson Wyatt further advised Knight that, in light of
the Plan's historical experience, it believed that the Plan's
actuarial assumptions were inaccurate and might jeopardize the
deductibility of contributions in the event of an IRS audit. 
Watson Wyatt recommended that several of the Plan's actuarial
assumptions, including its investment return and expense
projection, be amended to reflect more accurately the Plan's
historical performance. Watson Wyatt also advised Knight of the
actuarial effect of continuing the current assumptions, and again
cautioned that using the current investment return assumption might
be deemed unreasonable in the event of an IRS audit. 
 After meeting with Knight representatives in late March
1990 to discuss the proposed amendments to the Plan, Watson Wyatt
offered three alternative sets of assumptions designed to address
the deductibility concerns. Following the submission of these
alternatives, Knight asked Watson Wyatt to "calculate some
additional alternatives for pension plan improvements." Watson
Wyatt did so. After obtaining the approval of the union, Knight 
adopted one of Watson's original proposals, effective April 1,
1989. 
 In March 1996 Knight informed Watson Wyatt that an annual
audit by Knight's accountant had raised the question whether the
Plan was currently "excessively overfunded." In a letter responding
to Knight's inquiry, Watson Wyatt stated that in fact the Plan was
"not well funded for IRS purposes," and that, according to the
Plan's 1995 AVR, "the assets of $105,165 are equal to 50% of the
accrued liability of $208,501 for projected benefits . . . ." 
 Following this March exchange concerning the Plan's
funding status, Watson Wyatt provided Knight in November 1996 with
a copy of the Plan's AVR as of April 1, 1996. In a cover letter to
the report, Watson Wyatt summarized the range of permissible
funding levels for the 1996-97 plan year, and further stated that
"[a]s discussed in our meeting of October 24, 1996, in order to
fund the plan over a 12-year period, we estimate that the Company
needs to fund approximately $30,000 per year (including $7,500 of
expenses paid outside the plan)." 
 Knight commenced this action against Watson Wyatt in
April 1997, asserting claims for professional negligence, breach of
fiduciary duty, and violations of Massachusetts' unfair trade
practices statute, Mass. Gen. Laws ch. 93A. In its complaint,
Knight alleges, inter alia, that in 1990 Watson Wyatt negligently
advised it to adopt Plan amendments that were based on flawed
actuarial assumptions, that Watson Wyatt failed to take into
consideration the retroactive effect of such amendments, and that
the amendments immediately "caused the Plan to be substantially and
severely underfunded."
 The district court granted Watson Wyatt's motion for 
summary judgment on the ground that Knight's claims were barred by
the applicable three and four year statutes of limitation. The
court held that neither the discovery rule nor Mass. Gen. Laws ch.
260, 12 acted to toll the relevant limitations periods. This
appeal followed. 
 
 II. 
 Summary judgment is appropriate when there is no genuine
issue as to any material fact and the moving party is entitled to
a judgment as a matter of law. See Fed. R. Civ. P. 56(c). When
reviewing the entry of a summary judgment, we consider the
undisputed facts in the light most favorable to the nonmovant. SeeTagliente v. Himmer, 949 F.2d 1, 4 (1st Cir. 1991). 
A. The Discovery Rule
 While Knight acknowledges that its complaint is untimely
based on the applicable three and four-year limitations periods, it
argues that it is entitled to equitable tolling under the discovery
rule. Pursuant to the discovery rule, an action accrues when the
injured party knew, or, in the exercise of reasonable diligence,
should have known the factual basis for the cause of action. SeeTagliente, 949 F.2d at 4. In order for the statute of limitations
to be tolled pursuant to the discovery rule, "the factual basis for
the cause of action must have been 'inherently unknowable' at the
time of the injury." Id. The factual basis for a cause of action
is "inherently unknowable" if it is "incapable of detection by the
wronged party through the exercise of reasonable diligence." Id.
(quoting Borden v. Paul Revere Life Ins. Co., 935 F.2d 370, 376
(1st Cir. 1991)). 
 Knight maintains that delayed accrual of its cause of
action is warranted pursuant to the discovery rule because it did
not know until 1996, nor could it have discovered through the 
exercise of reasonable diligence, that Watson Wyatt's 1990 conduct
had resulted in an "immediate and substantial underfunding" of the
Plan. Accordingly, we must determine whether there is any genuine
issue as to a material fact that Knight knew, or in the exercise of
reasonable diligence should have known, of the Plan's alleged
underfunded status. See id. at 4-5. The burden is on Knight to
prove that it lacked knowledge or that, in the exercise of
reasonable diligence, it could not have known about the alleged
underfunding within the statute of limitations. See id. at 5; seealso Riley v. Presnell, 565 N.E.2d 780, 785 (Mass. 1991).
 Although the factual basis for all of Knight's claims is
the allegedly "underfunded" condition of the Plan, its complaint
and the material in opposition to Watson Wyatt's motion for 
summary judgment lack clarity on the meaning of Knight's allegation
that the Plan is "underfunded" a term that does not appear to
have a precise actuarial definition. We must discern the meaning
of this term, however, to determine whether Knight knew or should
have known through the exercise of reasonable diligence about this
ambiguous condition. 
 Watson Wyatt contends that Knight's allegation of
"underfunding" was in fact a shorthand reference to a more precise
actuarial term known as "unfunded actuarial accrued liability." 
The district court's decision tacitly agreed with this contention,
and we find support for Watson Wyatt's position in the record. 
Before filing its complaint in the district court, Knight mailed a
demand letter to Watson Wyatt. See Mass. Gen. Laws ch. 93A,
 9(3). In the demand letter, Knight alleged that Watson Wyatt's
misdeeds damaged Knight "in the extra amount of funding
contribution required from it as Plan Sponsor," and explained that
"[t]hat extra amount constitutes the underfunding liability." The
letter further alleged that "per the Valuation Report for April 1,
1996, the specific cash shortage as of April 1, 1996, was
$140,655." This figure $140,655 corresponds precisely with a
line item on the April 1, 1996, AVR entitled "unfunded actuarial
accrued liability." Thus, in the absence of any definition to the
contrary, we conclude that Knight used the ambiguous term
"underfunded" in its demand letter and complaint to refer to a more
precise actuarial term namely, "unfunded actuarial accrued
liability." 
 We turn next to determining whether Knight knew, or in
the exercise of reasonable diligence should have known, about the
Plan's "underfunded" status or, stated more precisely, its
"unfunded actuarial accrued liability." It is undisputed that each
of the AVRs filed annually by Watson Wyatt on behalf of Knight
contained a line item entitled "unfunded actuarial accrued
liability." Each AVR was identically formatted, and no
calculations were required to discern the amount of "unfunded
actuarial accrued liability." Viewing the AVRs alone, there can be
no question that Knight had sufficient information indeed, all of
the information it needed to know of the alleged "underfunded"
condition of the Plan.
 At oral argument before the district court, however,
Knight argued for the first time that the Plan was "underfunded" in
the amount of $360,000, not $140,655 as alleged in the earlier
demand letter. Thus, Knight argues, its allegation of
"underfunding" reflects more than the $140,655 "unfunded actuarial
accrued liability" disclosed on the AVR. To support this
assertion, Knight points to a letter it received from Watson Wyatt
(the "Watson Wyatt letter") in November 1996. In the letter,
Watson Wyatt stated: "As discussed in our meeting of October 24,
1996, in order to fund the plan over a 12-year period, we estimate
that the Company needs to fund approximately $30,000 per year
(including about $7,500 of expenses paid outside the plan)." 
Knight maintains that the Watson Wyatt letter constituted an
admission that the Plan was "underfunded" in the amount of $360,000
($30,000 times twelve years). Emphasizing that the $360,000 figure
did not appear in any of the reports that Watson Wyatt submitted to
it, Knight asserts that it "did not discover this $360,000.00
underfunding until 1996 when Watson Wyatt for the first time
revealed the same [in the Watson Wyatt letter]."
 Knight's belated recharacterization of its claim of
"underfunding" is unavailing. Even if Knight did not know and
should not have known about the full extent of the Plan's
"underfunding" until it received the Watson Wyatt letter, Knight's
own pleadings establish that it had the ability independent of
Watson Wyatt's purported "admission" letter to discover that
the Plan was "underfunded." See Cantu v. St. Paul Cos., 514 N.E.2d
666, 668 (Mass. 1987) (cause of action accrues on discovery of
"appreciable harm," even if the extent of the harm is not fully
known)(citing Olsen v. Bell Tel. Lab., Inc., 445 N.E.2d 609, 612
(Mass. 1983)). Knight's complaint alleges that "[b]y and through
an independent review of the Plan, Knight discovered in late 1995
and early 1996 that the Plan was substantially and severely
underfunded. Upon being advised of the same, Knight contacted
Watson [Wyatt] to discuss the Plan and to determine if in fact the
Plan had been and was continuing to be underfunded." Similarly,
Knight's written demand letter states that "[t]his [underfunding]
situation was brought to the attention of Geo. Knight Co., Inc., by
its accountant when discovered in the spring of 1996." As the
district court observed, these statements reveal that Knight did
indeed possess the information exclusive of Watson Wyatt's so-
called admission letter needed to discover that it had suffered
an appreciable harm. 
 Knight also contends that an annual tax filing prepared
by Watson Wyatt on behalf of Knight the Form 5500 C/R contained
information that was at odds with the annual AVRs and that left it
with the impression that the Plan was "well funded" (another
undefined term). Assuming for the purpose of consideration on
summary judgment that the Form 5500 C/R information was
inconsistent with the AVR information, Knight's failure to make
further inquiry to resolve the inconsistency precludes a finding
that it exercised reasonable diligence in discovering the
underfunded condition of the Plan. It is undisputed that Knight
never asked Watson Wyatt to explain how the Form 5500 C/R
information which it contends created the impression that the
Plan was "well funded" could be reconciled with the AVRs' express
disclosure of the existence of the Plan's unfunded actuarial
accrued liability on which Knight bases its contention that the
Plan is "underfunded." In these circumstances, we find no error in
the district court's conclusion that no jury could reasonably find
that Knight acted with the requisite level of diligence in
discovering the underfunded condition of the Plan. 
B. Mass Gen. Laws ch. 260, 12.
 Alternatively, Knight argues that it is entitled to
tolling under Massachusetts' fraudulent concealment statute, Mass.
Gen. Laws ch. 260, 12, because Watson Wyatt failed "to make
adequate and full disclosure" of the Plan's underfunded status. 
Section 12 provides:
 If a person liable to a personal action
 fraudulently conceals the cause of such action
 from the knowledge of the person entitled to
 bring it, the period prior to the discovery of
 his cause of action by the person so entitled
 shall be excluded in determining the time
 limited for the commencement of the action.
 
Mass. Gen. Laws ch. 260, 12. Although active fraud ordinarily is
required to constitute fraudulent concealment for the purposes of
section 12's tolling provision, see Stetson v. French, 72 N.E.2d
410, 412 (Mass. 1947), Massachusetts courts have recognized that
mere failure to reveal information can be fraudulent concealment by
a person, such as a fiduciary, who has a duty to disclose. SeeJamesbury Corp. v. Worcester Valve Co., 443 F.2d 205, 209 (1st Cir.
1971) (breach of contractual duty to disclose tolls limitations
period pursuant to section 12); Demoulas v. Demoulas Super Mkts.,
Inc., 677 N.E.2d 159, 174 (Mass. 1997)(breach of fiduciary duty of
disclosure tolls limitations period pursuant to section 12);
Puritan Med. Ctr., Inc. v. Cashman, 596 N.E.2d 1004, 1010 (Mass.
1992) (same). Such a duty to disclose may exist when "one party
reposes, to the other's knowledge, trust and confidence under
circumstances in which the other's failure to make disclosure would
be inequitable." Burns v. Massachusetts Inst. of Tech., 394 F.2d
416, 419 (1st Cir. 1968) (citing Reed v. A.E. Little Co., 152 N.E.
918 (Mass. 1926); Broomfield v. Kosow, 212 N.E.2d 556 (Mass.
1965)). Thus, we must determine whether the record raises any
genuine issue of material fact that would bring this case within
the parameters of section 12's tolling provision that is, whether
Knight reposed, to Watson Wyatt's knowledge, trust and confidence
in such circumstances that Knight's alleged failure to disclose
information beyond that expressly disclosed in the annual AVRs was
inequitable. 
 This equitable analysis is informed by Massachusetts
cases discussing a duty of disclosure pursuant to general
principles of fiduciary law. These cases emphasize that the
circumstances creating such fiduciary obligations as a duty to
disclose are varied, see Broomfield v. Kosow, 212 N.E.2d 556, 559-
60 (Mass. 1965); Warsofsky v. Sherman, 93 N.E.2d 612, 615 (Mass.
1950), and no universally-applicable rule distinguishes those
circumstances which give rise to a duty to disclose from those that
do not. Nonetheless, we have previously observed that a duty to
disclose will frequently be found where certain indicia of a
fiduciary relationship are present, including a great disparity or
inequality between parties and an abuse of that situation for the
benefit of the dominant party, particularly where unjust enrichment
would result. See Industrial Gen. Corp. v. Sequoia Pac. Sys.
Corp., 44 F.3d 40, 44 (1st Cir. 1995). Thus, trust and confidence
reposed in a party possessing a great disparity of knowledge or
expertise in a commercial setting, while ordinarily not enough
standing alone to give rise to fiduciary obligations, may produce
such obligations if the trust and confidence is knowingly betrayed
by that party for the purpose of securing some benefit to itself. 
See id.; Broomfield, 212 N.E.2d at 560-61; Reed, 152 N.E. at 920.
 In this case, as in most engagements of professional
services, there was a disparity of knowledge between Knight and
Watson Wyatt concerning actuarial matters, and Knight trusted
Watson Wyatt as the provider of its actuarial services. However,
this is not a case in which one party's failure to disclose
information resulted in some unjust enrichment at the expense of
another party; to the contrary, this is an ordinary negligence
action. Cf., e.g., Broomfield, 212 N.E.2d 556 (constructive trust
is warranted where plaintiff trusted and confided in defendant, who
used the influence springing from that trust and confidence to
obtain personal advantage at the expense of the plaintiff); Reed,
152 N.E. at 921 (where defendant took unfair advantage of
plaintiff's trust in him, plaintiff is entitled to equitable
relief); Hawkes v. Lackey, 93 N.E. 828 (Mass. 1911)(awarding
equitable relief where defendant, in whom plaintiffs reposed trust
and confidence in the management of their business affairs, acted
for his own benefit and to their detriment in loan transaction). 
The equitable principles animating section 12's tolling provision,
see Burns, 394 F.2d at 419, would be implicated by an allegation of
a wrongful acquisition of a benefit. However, there is no such
allegation before us in this case.
 There is also nothing in the record to suggest that
Knight's trust in Watson Wyatt resulted in its ceding control of
the Plan's management or assets to Watson Wyatt in a manner that
would make its alleged failure to provide a heightened level of
disclosure to Knight inequitable. See Burns, 394 F.2d at 419. 
As part of its actuarial duties, Watson Wyatt informed Knight of
the minimum annual contribution amount for ERISA purposes and of
the maximum annual contribution amount for tax deductibility
purposes, and at least once advised Knight of its belief that the
Plan needed to be amended to ensure that Knight's contributions
remained tax deductible. Although Watson Wyatt's work contributed
information necessary for Knight to make its decision whether and
how to amend the Plan, there is nothing in the record to suggest
that Watson Wyatt controlled Knight's decision. Furthermore,
although Watson Wyatt informed Knight of the minimum and maximum
contributions to the Plan allowed by ERISA and the Internal Revenue
Code, respectively, we find no evidence in the record that Knight
controlled the decision about how much to contribute to the Plan
within these statutory ranges, or that Watson Wyatt exercised
discretion over the management of Knight's business affairs in any
respect. 
 We do not mean to suggest, of course, that an actuary can
never owe duties of a fiduciary nature to its client. Indeed, it
is conceivable that if Watson Wyatt had found confidential
information in Knight's books and had appropriated the information
or had otherwise used the information to its own advantage, a claim
might be made for breach of a duty of loyalty. Such allegations
are not now before us. It is enough in this case that the essence
of Knight's claim is the alleged negligent performance of actuarial
services and not misappropriation or disloyalty in violation of
fiduciary duties; that Knight had adequate information in the form
of the annual AVR disclosures to put it on notice of such a
negligence claim; and that the special circumstances which would 
trigger section 12's equitable tolling provisions, see Burns, 394
F.2d at 419, are simply not present in this case. 
 Affirmed.