James F. MOORE, Plaintiff in Error,

v.

Grady YORK and National Bank of Tulsa,
Defendants in Error.

No. 39607.

Supreme Court of Oklahoma.

May 2, 1962.

Greer & Greer, Tulsa, for plaintiff in error.

Rucker, Tabor, Best, Sharp & Shepherd, Thomas L. Palmer, O. H. "Pat" O'Neal, Tulsa, for defendants in error.

BERRY, Justice.

By this action plaintiff in error, James F. Moore, hereafter referred to as "plaintiff", seeks to recover damages from defendants in error, Grady York, hereafter referred to as "York", and National Bank of Tulsa, hereafter referred to as "bank", which allegedly resulted from the latter's causing plaintiff to be charged with and tried in Tulsa County, Oklahoma, for the offense of obtaining money from bank under false pretences. When defendants in error are referred to collectively, the reference will be "defendants".

At the conclusion of plaintiff's case in chief in the instant case, the defendants interposed a demurrer which was sustained and the jury empaneled to try the case was discharged. Plaintiff subsequently perfected this appeal.

The basic issue presented and argued by the parties is whether the evidence introduced by plaintiff tended to show want of probable cause on the part of defendants in causing plaintiff to be prosecuted for the above mentioned offense. The evidence bearing upon this issue can be summarized thusly:

On January 5, 1959, a person, hereafter referred to as "impostor", telephoned York who was an employee of bank, and made inquiry concerning a so-called Home Improvement Loan. The impostor represented that he was William A. Arnold and gave Arnold's street address in Tulsa as his address. The impostor subsequently called at the bank in person for the purpose of completing the loan. It appears that bank was willing to lend to Arnold $1,650.00 and believing that the impostor was Arnold, paid over to the impostor $1,650.00. Prior to the payment Arnold's and his wife's forged signatures appeared on the note and mortgage. There is evidence that the impostor signed Arnold's name while at the bank.

A document which related to the loan was mailed to the Arnolds, who promptly advised the defendants that they had neither sought nor obtained a loan from bank.

After defendants had learned of the fraud practiced upon bank, York, on behalf of the bank, undertook to learn the identity of the impostor.

The information that the impostor gave in connection with the loan from bank indicated that he was personally acquainted with the Arnolds, property that they owned and the manner in which some of the property had been acquired. The investigation developed that plaintiff was a personal friend of the Arnolds and may have had such knowledge of their property and manner of acquisition of same as to enable him to supply the information that the bank relied upon in making the loan.

York, accompanied by an attorney for bank, called at the automobile agency where

plaintiff was employed. York made known that he desired to talk to plaintiff. Upon plaintiff's being pointed out to York by one of plaintiff's employers, York stated that he "looked" like the impostor. At that time York and the attorney discussed the loan that had been made. Plaintiff denied that he was the impostor and asserted that he had no knowledge of the loan.

As a result of his conversation with plaintiff, York learned that plaintiff and the Arnolds were personal friends; that plaintiff, as a salesman, sold the Arnolds several automobiles; that plaintiff had general knowledge of the Arnold's property and the manner in which some of it was acquired. As a result of further investigation, York learned that plaintiff had been convicted of felonies when a young man and had served time in penal institutions. The evidence indicates that plaintiff reformed and for the past several years has been a law-abiding citizen.

During the investigation York accused plaintiff of defrauding the bank and stated to him that unless he repaid the $1,650.00 he would be prosecuted. Plaintiff maintained that he did not sign the note and mortgage and that he was not the impostor. He refused to pay bank the loss.

York subsequently presented the matter to an assistant county attorney of Tulsa County, who caused plaintiff to be charged with the offense of obtaining money under false pretenses. Plaintiff was arrested and placed in jail. Upon making bond he was released. Following a preliminary hearing on the charge, plaintiff was bound over for trial in the District Court. Plaintiff was acquitted of the charge following trial in the District Court. Plaintiff thereafter instituted this action.

It appears that the first person interrogated by York in making the investigation was Mrs. Arnold who testified that York stated to her that the impostor "was around five eight" and that his hair was "gray". York also talked to one of plaintiff's employers who testified that York stated that the impostor was of "medium height" and had "grayish hair". The evidence shows that plaintiff is six feet tall and that he does not have gray or grayish hair. In the matter of negotiating the loan, the impostor conferred with York at the latter's office on two occasions. It, therefore, appears that York should have been able to give a fairly accurate estimate of the impostor's height and would know whether or not his hair was gray.

The evidence shows that plaintiff did not sign the note and mortgage. A witness testified that at the time same were signed, plaintiff was bowling at an establishment in Tulsa. It, therefore, appears that the only evidence that directly connected plaintiff with the offense was York's identification of him as the culprit. In fact, the assistant county attorney testified that the charge would not have been filed had York been uncertain about the identity of the culprit.

In the second paragraph of the syllabus to Williams et al. v. Frey, 182 Okl. 556, 78 P.2d 1052 it is stated that "Ordinarily, if the known facts and circumstances are such as to justify a man of prudence and caution in believing that the offense has been committed, probable cause exists."

At p. 733, Sec. 49, "Malicious Prosecution", 34 Am.Jur., this is said:

"According to the generally accepted view, probable cause does not depend on the actual state of the case in point of fact, but upon the honest and reasonable belief of the party commencing the prosecution. In proving the existence of probable cause or in disproving the want of it, he must show an honest belief in the guilt or liability of the accused. But such belief alone is not sufficient to justify one in charging another with the commission of a crime. The prosecutor must not only actually believe in the guilt of the accused, but the belief must also exist in the defendant's mind at the time of the proceeding, and must be supported by circumstances sufficiently strong in themselves

to warrant a reasonably cautious or prudent man in that belief. * * * "

Did the fact that York described the impostor as being five feet eight inches tall and having gray hair tend to show that he could not honestly have believed that plaintiff, who unquestionably did not fit the description, was the impostor?

Defendants argue that the fact that York described one person and identified another as the impostor is without significance. In support of their argument they cite Brown v. St. Louis & S. F. Ry. Co. et al., 158 Okl. 31, 12 P.2d 528. This case is cited in the annotated notes beginning at p. 1048, 43 A.L.R.2d.

In the cited case it was held that "An honest belief that one has clearly recognized an individual in the actual commission of a crime—reasonably founded on a close examination of his features and recognition of his voice—furnishes probable cause for his prosecution."

■ To our way of thinking the cited case is not in point. In the instant case the matter of whether York honestly believed plaintiff was the impostor was questionable. The question necessarily arose because York described one person and identified another as the impostor. We have held on several occasions that where the evidence is conflicting on the question of probable cause the question should be submitted to the jury. See Patrick v. Wigley, 206 Okl. 194, 242 P.2d 423; Miller v. Bourne, 208 Okl. 362, 256 P.2d 431 and cited authority.

Defendants argue that while the evidence shows four of the six elements that must be proved in order to establish an action for malicious prosecution, it does not show probable cause or malice which are two of the basic elements. See Empire Oil & Refining Co. v. Cambron, 172 Okl. 202, 44 P.2d 972.

■■ It is settled law in this jurisdiction that malice in instituting a criminal proceeding may be inferred or implied in actions for malicious prosecution where the proof shows want of probable cause. See Empire Oil & Refining Co. v. Cambron, supra. Since we are of the opinion that the evidence tends to show want of probable cause, the mentioned rule is applicable. We add, that as to malice, permissible conclusions that the jury could have reached were that (1) in view of York's description of the impostor, he could not honestly have believed that plaintiff was the impostor; that (2) in positively identifying plaintiff as the impostor, York was motivated by a desire to coerce plaintiff into paying to bank the $1,650.00 loss and not a desire that the law be vindicated. It is apparent that plaintiff was a logical suspect and that York's identification of plaintiff as the culprit made a strong case against plaintiff.

■ Defendants argue that York made a full disclosure of the facts to the assistant county attorney prior to the prosecution being instituted which establishes absence of malice and negatives want of probable cause. Such is the law in this jurisdiction. See Empire Oil & Refining Co. v. Cambron and Patrick v. Wigley, supra.

■ In the instant case York wholly failed to advise the county attorney that he initially described as the impostor a person who could not have been plaintiff. It is apparent that this was a material fact and was considered as such by the assistant county attorney who testified that had the identity of the impostor been doubtful, the prosecution would not have been instituted. This was said in the first paragraph of the syllabus to St. Louis-San Francisco Ry. Co. v. Butler, 129 Okl. 269, 264 P. 138:

"In an action for malicious prosecution, where the prosecutor, before instituting the contempt proceeding, obtained the advice of counsel, but did not fully and fairly communicate to him all of the material facts bearing on the case of which he had knowledge, or could have obtained the same by reasonable diligence and inquiry, acting upon the advice thus received, it does

not establish the absence of malice or negative a want of probable cause, and an action for malicious prosecution may be maintained."

We are of the opinion that under the facts of this case, the above quoted rule is applicable.

For reasons stated, the judgment of the trial court is reversed with directions to grant plaintiff a new trial.

WILLIAMS, C. J., BLACKBIRD, V. C. J., and JACKSON and IRWIN, JJ., concur.

DAVISON, J., concurs in result.