**Michael LINDSEY, Plaintiff-Appellant,**

v.

**DAYTON–HUDSON CORPORATION, d/b/a Target Stores, a Minnesota Corporation, Defendant-Appellee.**

No. 77–1051.

United States Court of Appeals, Tenth Circuit.

Argued May 10, 1978.

Decided Feb. 5, 1979.

Rehearing Denied March 8, 1979.

William W. Choate, Oklahoma City, Okl. (William D. Graves, Oklahoma City, Okl., with him on the brief), for plaintiff-appellant.

A. T. Elder, Jr., Oklahoma City, Okl. (Mort G. Welch, Oklahoma City, Okl., with him on the brief), of Cooper, Stewart, Elder & Abowitz, Oklahoma City, Okl., for defendant-appellee.

Before McWILLIAMS, BREITENSTEIN and LOGAN, Circuit Judges.

LOGAN, Circuit Judge.

This appeal arises out of a suit brought by Michael Lindsey (Lindsey) against Dayton-Hudson Corporation d/b/a Target Stores (Target), in which summary judgment was rendered against Lindsey on all counts of the complaint.

The complaint alleged five causes of action: False imprisonment, malicious prosecution, assault and battery, slander, and civil rights violations under 42 U.S.C. § 1983. In his reply brief on appeal Lindsey has conceded that Target's position with respect to the civil rights count is correct; that issue will not be discussed in this opinion. Therefore, jurisdiction as to all counts to be considered in this appeal is based entirely upon diversity of citizenship. The incidents occurred in Oklahoma, and that state's law is controlling.

The trial court granted summary judgment on the causes to be considered on appeal on the basis that Lindsey had not complied with the applicable statute of limitations. Target also supports dismissal of the malicious prosecution count on the alternative ground that Lindsey has not shown that the criminal action which forms the basis of the complaint was brought by Target. Various contentions related to the statute of limitations question are argued by appellant. Appellant also argues that summary judgment was improper, and that he should have been permitted to maintain this action under a fictitious name.

The incident giving rise to this litigation began on April 22, 1975, in Target's store in Oklahoma City. Michael Thompson, a security specialist for Target, arrested Lindsey for allegedly attempting to persuade Thompson to engage in a homosexual act in the men's rest room. Lindsey was placed in the custody of other Target employees, read his *Miranda* warnings, questioned and photographed. The police were then called, took Lindsey into custody and held him from approximately 6:00 p. m. on April 22 until 9:00 a. m. the following day. Subsequently Lindsey was charged in a state criminal action with offering to engage in an act of lewdness. He was tried to a jury

and acquitted on September 10, 1975. This civil action was filed April 22, 1976, admittedly the last day permitted by the Oklahoma one-year statute of limitations applicable to the false imprisonment, assault and battery, and slander counts of the complaint.

Lindsey's counsel attempted to file the complaint under the pseudonym "John Doe" without revealing Lindsey's true name. According to his affidavit he also presented a summons and praecipe for summons at the same time. The clerk refused to accept the filing on grounds that it was not proper to sue using only a pseudonym. Apparently after some debate on the matter a ruling by the judge was obtained that plaintiff had to use his real name. The ruling was dated April 22, and it appears undisputed that the complaint was accepted for filing on that day after the name "John Doe" was lined out and Lindsey's real name inserted. Since the only praecipe and summons in the record are dated April 29, 1976, apparently the original praecipe and summons offered to the clerk were not filed on the earlier date. It appears that plaintiff's counsel left the city on April 23 and did not return to file these documents in Lindsey's real name until April 29.

A motion for summary judgment was made by Target shortly after the filing, defending on the statute of limitations issue and other grounds. This motion was denied by the court. After some discovery another motion was made by Target raising essentially the same points, supported by additional materials, including a full transcript of the criminal trial. This motion was granted, the court finding that Lindsey had not complied with the Oklahoma statute of limitations applicable to the four counts involved in this appeal.

I

▉ We first treat appellant's argument that summary judgment was improper. Lindsey contends the complaint did not reveal on its face a failure to comply with the statute of limitations. But that is not controlling, because Fed.R.Civ.P. 56(e), govern-

ing summary judgment motions, permits the moving party to present matters outside the pleadings. Even if the complaint was filed in time, the holding of the court was that the summons (which shows a date outside the statute of limitations) is an integral part of the statute of limitations and must be issued on or before April 22.

We see no merit in the contentions that summary judgment was improper because a motion to dismiss, or an earlier motion for summary judgment, which raised the same issues, had been denied. Fed.R.Civ.P. 12(b) permits a motion to dismiss to be treated as one for summary judgment when matters outside the pleadings are presented to and not excluded by the court. *Carter v. Stanton*, 405 U.S. 669, 92 S.Ct. 1232, 31 L.Ed.2d 569 (1972). A second motion for summary judgment is proper after a prior motion is dismissed, if supported by new material. *Kirby v. P. R. Mallory & Co., Inc.*, 489 F.2d 904 (7th Cir. 1973); 6 Moore's Federal Practice ¶ 56.14[2], at 56–363 to 56–366 (2d ed. 1948 Supp.1976). While arguably there was no new material presented to support the second motion on the statute of limitations issue, these were not the only issues presented in the motions. When the second motion was considered there was a significantly expanded record, including the full transcript of the state criminal case. Until final decree the court always retains jurisdiction to modify or rescind a prior interlocutory order. Fed.R. Civ.P. 54(b). Although the court might properly refuse to consider a second motion, we will not require a judge to perpetuate error or take a more roundabout way to arrive at an ultimately necessary judgment by refusing him the right to entertain a second motion for summary judgment after he has ruled once the other way. *See Bon Air Hotel, Inc. v. Time, Inc.*, 426 F.2d 858 (5th Cir. 1970); *Burns v. Massachusetts Institute of Technology*, 394 F.2d 416 (1st Cir. 1968).

## II

The affidavit of Lindsey's counsel stated a praecipe and summons were tendered at the time the John Doe complaint was filed. The refusal to accept the John Doe complaint, summons and praecipe, is alleged to be a quashing of the summons making applicable Okla.Stat.Ann. tit. 12, § 154.5 (West Supp.1978), which permits issuance of a new summons following quashing of the original summons even though the statute of limitations may have expired. Neither side cites any authority for their contentions that this refusal to accept the summons is or is not a quashing thereof, and we have found none.

We believe appellee is correct in arguing that to quash a summons it first must be issued. We do not regard the clerk's refusal to accept for filing a tendered summons as the quashing thereof by any duly constituted authority. Whether or not the action of the clerk or the judge was correct with respect to the John Doe complaint and summons, it was the responsibility of the plaintiff to persist and obtain a court ruling which he could follow or appeal. In fact it appears that the judge made a ruling on the day of the filing, and the plaintiff complied partially by filing his complaint. If the summons is an integral part of the statute of limitations, which we discuss below, and time was of the essence, then it was plaintiff's duty to put the summons in proper form so that it would be issued in time. *See Baker v. Sisk*, 1 F.R.D. 232 (E.D.Okl. 1938). For these reasons the tender of the John Doe summons on April 22 has no special significance in this case.

## III

The most crucial issue in this appeal is whether the action was filed in time. This case is *Ragan v. Merchants Transfer & Warehouse Co.*, 337 U.S. 530, 69 S.Ct. 1233, 93 L.Ed. 1520 (1949), reincarnated. Okla. Stat.Ann. tit. 12, § 95 (West Supp.1978), imposes a one-year statute of limitations for slander, assault, battery, malicious prosecution or false imprisonment, all involved here. Okla.Stat.Ann. tit. 12 (West Supp. 1978), § 97 provides:

An action shall be deemed commenced, within the meaning of this article, as to

each defendant, *at the date of the summons* which is served on him, or on a codefendant, who is a joint contractor or otherwise united in interest with him. Where service by publication is proper, the action shall be deemed commenced at the date of the first publication. *An attempt to commence an action shall be deemed equivalent to the commencement thereof,* within the meaning of this article, *when the party faithfully, properly and diligently endeavors to procure a service;* but such attempt must be followed by the first publication or service of the summons, or if service is sought to be procured by mailing, by a receipt of certified mail containing summons, within sixty (60) days. (Emphasis supplied.)

The Kansas statute involved in *Ragan* is substantially identical,[1] except for additions not relevant to this case added in 1969. Indeed it is admitted that the Oklahoma Act was derived from the Kansas law.

The Oklahoma courts have held that § 97 is an integral part of the statute of limitations. *See Walker v. Armco Steel Corp.,* 452 F.Supp. 243, 245 (W.D.Okl.1978); *Kile v. Cotner,* 415 P.2d 961 (Okl.1966); *Kelly-Goodfellow Shoe Co. v. Todd,* 5 Okl. 360, 49 P. 53 (1897). The language of the section limits its application to "this article," meaning the chapter on limitations on actions. Commencement for all other purposes is governed by Okla.Stat.Ann. tit 12, § 151 (West Supp.1978). Section 97 creates a two-step procedure for commencing an action: the filing of the complaint, and

issuance of the summons. *Fitzsimmons v. Rauch,* 197 Okl. 426, 172 P.2d 633 (1946). The statute places the responsibility for tolling the statute of limitations on the plaintiff who must file the complaint and assure issuance (not service) of the summons. *Baker v. Sisk,* 1 F.R.D. 232 (E.D.Okl. 1938). An action commences when both are accomplished. The parallel to *Ragan* is exact.

Appellee Target relies upon *Ragan,* of course, to argue that the failure of Lindsey to have issued a summons within the one-year statute of limitations is substantive, and fatal to his cause. Lindsey's argument, as might be expected, is that under Fed.R. Civ.P. 3 the suit is deemed to be commenced upon filing of the complaint; the issuance of summons is a procedural matter governed by Fed.R.Civ.P. 4. He relies upon *Hanna v. Plumer,* 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965).

The instant case is controlled by *Ragan* if that case is still law. Whether it is has been the subject of considerable commentary, and the circuits are split on the subject.[2] We found it unnecessary to decide the question in *Chappell v. Rouch,* 448 F.2d 446, 448 (10th Cir. 1971), but we must do so now.

In *Ragan* the issue was stated to be whether the requirement of service of process was an integral part of the statute of limitations. The court said since local law created the cause of action on which the suit was brought the court cannot give the

---

1. Kan.Gen.Stats.1935, § 60–308, as quoted 337 U.S. at 531, n.4, 69 S.Ct. at 1234 provided:

   An action shall be deemed commenced within the meaning of this article, as to each defendant, at the date of the summons which is served on him, or on a codefendant who is a joint contractor, or otherwise united in interest with him. Where service by publication is proper, the action shall be deemed commenced at the date of the first publication. An attempt to commence an action shall be deemed equivalent to the commencement thereof within the meaning of this article when the party faithfully, properly and diligently endeavors to procure a service; but such attempt must be followed by the first publication or service of the summons within sixty days.

2. Holding *Ragan* is still valid: *Witherow v. Firestone Tire & Rubber Co.,* 530 F.2d 160 (3d Cir. 1976); *Anderson v. Papillion,* 445 F.2d 841 (5th Cir. 1971); *Groninger v. Davison,* 364 F.2d 638 (8th Cir. 1966); *Sylvester v. Messler,* 351 F.2d 472 (6th Cir. 1965), *cert. denied,* 382 U.S. 1011, 86 S.Ct. 619, 15 L.Ed.2d 526. *Cf. Prashar v. Volkswagen of America, Inc.,* 480 F.2d 947 (8th Cir.), *cert. denied,* 415 U.S. 994, 94 S.Ct. 1596, 39 L.Ed.2d 891 (1973). To the contrary: *Ingram v. Kumar,* 585 F.2d 566 (2d Cir. 1978), *following Sylvestri v. Warner & Swasey Co.,* 398 F.2d 598 (2d Cir. 1968); *Smith v. Peters,* 482 F.2d 799 (6th Cir. 1973), *cert. denied,* 415 U.S. 989, 94 S.Ct. 1587, 39 L.Ed.2d 886 (1974) (without mentioning *Sylvester v. Messler, supra* ).

cause longer life in the federal court than it would have had in state court. 337 U.S. at 533–534, 69 S.Ct. 1233.

*Hanna* was a diversity action also, in which the summons was served in accordance with the federal rules which did not require "in hand" delivery, rather than according to Massachusetts law which required "in hand" service upon an executor. The court stated the question for decision was whether in such a case service "shall be made in the manner prescribed by state law or that set forth in Rule 4(d)(1) of the Federal Rules of Civil Procedure." 380 U.S. at 461, 85 S.Ct. at 1138. In holding that federal law controlled, it said that ruling otherwise would void or displace a federal rule which only altered the mode of enforcing state created rights. 380 U.S. at 473, 85 S.Ct. 1136. "Petitioner, in choosing her forum, was not presented with a situation where application of the state rule would wholly bar recovery; [citing *Ragan, inter alia*], rather, adherence to the state rule would have resulted only in altering the way in which process was served." 380 U.S. at 469, 85 S.Ct. at 1143 (footnotes omitted).

The court did not expressly overrule *Ragan* ; in fact it cited the case three times. Mr. Justice Harlan's concurring opinion commented extensively upon *Ragan* and said it was wrongly decided. The courts and commentators who argue *Ragan* was overruled, *sub silentio*, by *Hanna* rely upon the Court's language in discussing the policy underlying *Erie v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), and the primacy of the Federal Rules on matters of pleading and practice.

On its face service of process would seem procedural in the traditional sense. Whether the case commences upon filing or issuance of summons would not appear to have any significant effect upon forum shopping. But it certainly affects the outcome here whether summons must be issued before the end of the statute of limitations. And arguably notification of the defendant is an important purpose of the statute of limitations, and if he has not been served

there is little difference to him whether the case has been filed or the case has not been filed.

We agree with the discussion in 4 C. Wright & A. Miller, Federal Practice and Procedure: Civil § 1057 at 190–191 (1969):

> There is some substance to the distinction offered in *Hanna*, particularly in the notion that Rule 3 does not deal with the particular problem raised in *Ragan*. By way of contrast, Rule 4(d)(1) directly covers the situation presented in *Hanna*. Rule 3 simply provides that an action is commenced by filing the complaint and has as its primary purpose the measuring of time periods that begin running from the date of commencement; the rule does not state that filing tolls the statute of limitations. Thus, *Ragan* and similar cases may still be read as holding that Rule 3 does not determine or measure the point at which certain state-created rights are extinguished and that this conclusion is unaffected by *Hanna*.
>
> It would be well to remember that the Supreme Court knows how to overrule past decisions when it wishes to do so, and it has not felt inexorably bound by stare decisis on matters of procedure. The Court did not overrule *Ragan* in *Hanna* nor did it hold that in Massachusetts mere filing under Rule 3 was sufficient to commence the action and thereby toll the statute of limitations; on the contrary, it upheld the need for service of process as required by Massachusetts law. Inasmuch as the Court did not overrule *Ragan* but took pains to indicate why *Hanna* was not inconsistent with the earlier case, it seems the safer course to assume that the *Ragan* decision is still authoritative. Perhaps the day will come when the Court will inter *Ragan* ; there will be few mourners. (Footnotes omitted.)

We hold *Ragan* is still law, binding upon us. The causes for false imprisonment, assault and battery, and slander which accrued, if at all, on April 22 or 23, 1975, were not commenced in time under this analysis, and the dismissal as to those causes must be affirmed.

### IV

The cause on malicious prosecution is a different matter, since it was never argued below that this accrued until the trial in September 1975, when Lindsey was acquitted on the felony charge. The trial judge erroneously found, in his memorandum opinion, that the malicious prosecution count was barred by the statute of limitations. We are generally reluctant to affirm on appeal on legal grounds not considered by the trial judge, but in appropriate cases we may do so. *Manufacturer's Nat'l Bank of Detroit v. Hartmeister,* 411 F.2d 173 (10th Cir. 1969). We consider this such a case since both sides briefed the issue, and the facts are sufficiently clear to permit the determination. We may affirm the granting of summary judgment if any proper ground exist to support the ruling. *Davis v. Liberty Mutual Ins. Co.,* 525 F.2d 1204 (5th Cir. 1976); *Paskaly v. Seale,* 506 F.2d 1209 (9th Cir. 1974).

The controlling law indicates that malicious prosecution only accrues when five elements exist: the bringing of an action, successful termination in favor of the plaintiff, lack of probable cause, malice, and damages. *Page v. Rose,* 546 P.2d 617 (Okl.1976); *Towne v. Martin,* 196 Okl. 510, 166 P.2d 98 (1945). Therefore, if we find, after review of the record, that even one element of a cause of action for malicious prosecution is negatived, without contradicting evidence, we may affirm.

The facts are clear that the apprehension of Lindsey and all testimony with respect to the criminal act he allegedly committed were by Michael Thompson, the Target loss prevention supervisor. It does not appear that Riley Lenex, the store manager, signed any complaint or participated in any trial. His participation and that of other Target employees, if any, was to believe Thompson, and hold Lindsey in custody pending arrival of the police after he was turned over by Thompson.

The record indicates the police made an investigation, and changed an original charge of indecent exposure and disorderly conduct to the one on which Lindsey was tried. The state court found probable cause and tried Lindsey on the charge of engaging in an act of lewdness. Thus on its face the defenses of not bringing the action, probable cause and lack of malice, all seem applicable. Mere acquittal on the criminal charge does not establish lack of probable cause. *Page v. Rose,* 546 P.2d 617, 620 (Okl.1976). In avoidance Lindsey argues that it is not necessary to be the actual charging party; that Thompson was in effect the prosecutor since the entire state's case was based upon Thompson's testimony and apprehension of Lindsey. It is argued he is entitled to go to the jury on the question of Thompson's veracity. *See General Motors Acceptance Corp. v. Davis,* 151 Okl. 255, 7 P.2d 157 (1931). We do not agree.

Assuming Lindsey's innocence, Thompson was either mistaken in his interpretation of Lindsey's behavior in the store rest room, or he lied. If mistaken then he, and his employer, are insulated by the full disclosure to the police who made their own determination as to the charge which they carried through the courts. *Missouri, Kansas & Oklahoma Coach Lines v. Meister,* 330 P.2d 579 (Okl.1958); *Moore v. York,* 371 P.2d 469 (Okl.1962). Thompson testified at trial, subject to penalties of perjury, to the same story which he told the police. No allegation is made that he was not consistent throughout the investigation or trial.

Assuming the worst, that Thompson was lying and fabricated a story against Lindsey, it should be noted this is not a suit against Thompson, but against his employer. Some facts must be shown or alleged to support malice attributable to the store for a prosecution based upon a falsehood. Nothing appears in the record or is alleged except the conflict in testimony of the parties at the state trial; and even Lindsey's testimony is consistent with Thompson erroneously interpreting Lindsey's actions and responses. This is not enough to get to a jury. For these reasons we affirm the trial court's grant of summary judgment on the malicious prosecution claim.

## V

Although we are affirming the summary judgment dismissing all counts of the complaint, this opinion will be published and Lindsey has a right to seek certiorari in the United States Supreme Court. Therefore, we must consider his right to proceed under the fictitious John Doe name to preserve his anonymity.

This use of pseudonyms concealing plaintiffs' real names has no explicit sanction in the federal rules. Indeed it seems contrary to Fed.R.Civ.P. 10(a) which requires the names of all parties to appear in the complaint. Such use obviously may cause problems to defendants engaging in discovery and establishing their defenses, and in fixing res judicata effects of judgments. Yet the Supreme Court has given the practice implicit recognition in the abortion cases, *Roe v. Wade,* 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973), and *Doe v. Bolton,* 410 U.S. 179, 93 S.Ct. 739, 35 L.Ed.2d 201 (1973), with minimal discussion. Most of the cases permitting the practice have involved abortion, birth control, and welfare prosecutions involving abandoned or illegitimate children. We have found only a few cases where the propriety of the technique was discussed.

*Doe v. Deschamps,* 64 F.R.D. 652 (D.Mont.1974) cites most of the cases. It holds that the public generally has a right to know, refuses to permit it except in unusual cases, and rules that it will not be permitted in an action involving plaintiff's future professional and economic life. *Roe v. State of New York,* 49 F.R.D. 279 (S.D.N.Y.1970), concluded that where only fictitious names were used for plaintiffs the filing of the complaint would be ineffective to commence an action. It recognized that if an action were commenced properly, the court could issue protective orders in appropriate cases to shield the identity of the plaintiffs. *Roe v. Ingraham,* 364 F.Supp. 536, 541 n.7 (S.D.N.Y.1973), recognized the procedure as proper where "if plaintiffs are required to reveal their identity prior to the adjudication of the merits of their privacy claim, they will already have sustained the injury which by this litigation they seek to avoid." *Doe v. Boyle,* 60 F.R.D. 507 (E.D. Va.1973), refused to permit a suit under the tax laws to be carried on in a fictitious name because it involved personal privileges under the Fifth Amendment. Additionally the court was concerned that after judgment numerous persons might claim to be John Doe.

While the issue is not free from doubt we think all cases we reviewed implicitly, at least, recognize that identifying a plaintiff only by a pseudonym is an unusual procedure, to be allowed only where there is an important privacy interest to be recognized. It is subject to a decision by the judge as to the need for the cloak of anonymity. The lower court here gives no reason for its denial of permission to use the pseudonym. But Lindsey had already suffered the worst of the publicity and embarrassment by being a named defendant in a state criminal trial. His suit in effect argues that the only way his reputation can be restored after that experience is by a court ruling in his favor and name on his claims of slander, malicious prosecution and the like. This is not a case where there seems a social interest in concealment of his identity. We believe that the proper standard of review upon appeal is whether the trial court abused its discretion, and hold that it did not err in refusing to permit the action to be carried on under the John Doe pseudonym.

The judgment is affirmed.