597 F.2d 215
 James D. ROSE, a minor, who sues by and through Hillary
Rose, his father and next friend, and Hillary
Rose, in his own Individual capacity,
Plaintiffs-Appellants,
v.
K. K. MASUTOKU TOY FACTORY COMPANY, a Foreign Corporation,
Masudaya Toy Company, Ltd., a Foreign Corporation, Janco
Industries, Inc., a Foreign Corporation, and T. G. & Y.
Stores Company, a Delaware Corporation, Defendants-Appellees.
 No. 77-1892.
 United States Court of Appeals,
Tenth Circuit.
 April 19, 1979.
 
 Clifton D. Naifeh, Oklahoma City, Okl. (Howard K. Berry, Jr., Oklahoma City, Okl., on brief), for plaintiffs-appellants.
 Gary A. Bryant, Oklahoma City, Okl. (Clyde A. Muchmore and Richard C. Ford of Crowe, Dunlevy, Thweatt, Swinford, Johnson & Burdick, Oklahoma City, Okl., on brief), for defendants-appellees K. K. Masutoku Toy Factory Co. and Masudaya Toy Co., Ltd.
 Before McWILLIAMS and DOYLE, Circuit Judges, and MARKEY, Chief Judge.*
 WILLIAM E. DOYLE, Circuit Judge.
 
 
 1
 This is an appeal from a judgment of dismissal granted in favor of Masutoku Toy Factory Company and Masudaya Toy Company, Ltd., on the basis that personal jurisdiction had not been obtained against them and that the statute of limitations barred the suit.
 
 
 2
 The memorandum opinion and order entered September 8, 1977, set forth the reasons in support of the trial court's final judgment entered pursuant to Rule 54(b) of the Federal Rules of Civil Procedure.
 
 
 3
 On January 27, 1977, the appellants filed a complaint in the United States District Court for the Western District of Oklahoma against the Masutoku Toy Factory Company, the Masudaya Toy Company, Ltd., both non-domesticated Japanese corporations, Janco Industries, Inc., a non-domesticated foreign corporation, and T. G. & Y. Stores Company, a Delaware corporation. By this action appellants sought to recover $150,000 as damages for personal injuries which resulted from an allegedly defective and dangerous toy train which was claimed to have injured James D. Rose, the minor plaintiff. The boy's father, Hillary Rose, sought additional damages in the sum of $47,000 for medical expenses incurred and for the loss of services of his minor son. Negligence and products liability are the legal bases for the action.
 
 
 4
 On January 27, 1977, appellants, through their attorney, filed a praecipe for summons to be served on each defendant. The summons issued to appellees, the Masutoku Toy Factory Company and the Masudaya Toy Company, and was directed to be served by the United States Marshal upon the Oklahoma Secretary of State, which was the address given. The Secretary of State was actually served on February 1, 1977. For reasons not known, the Secretary of State did not forward the papers to appellees, Masutoku Toy Factory Company and Masudaya Toy Company, Ltd.
 
 
 5
 Finally, on May 3, the attorney for plaintiffs-appellants saw to it that summonses were mailed to the foreign appellees through the clerk of the United States District Court for the Western District of Oklahoma. Return receipt was required pursuant to Rule 4(i)(1)(d) of the Federal Rules of Civil Procedure. The return receipt was received and filed by the court clerk on May 16, 1977.
 
 
 6
 Thereupon, on June 27, 1977, the appellees filed a motion to dismiss on the ground that the action was barred by the statute of limitations by lack of In personam jurisdiction over the appellees and by improper venue. Janco and T. G. & Y. did not challenge the service on them and so they are not parties on this appeal. The motion to dismiss was granted following the submission of the case on briefs.
 
 
 7
 The court ruled in essence that more than two years had lapsed between the date of the injury, January 31, 1975, and the date valid service was made by certified mail, which was sometime after the 3rd day of May 1977, and that under Oklahoma law the action was not commenced until service was made. The court ruled that the two-year statute of limitations effectively barred the action.
 
 
 8
 Because of the conclusiveness of the foregoing ruling, the trial court determined that it was unnecessary to discuss the remaining aspects of the appellees' motion. Nor did the trial court consider the aspect that James D. Rose was a minor on whom the statute of limitations might not have run.
 
 The contentions of the appellants are:
 
 9
 First, that the action commenced when the complaint was filed in the United States District Court.
 
 
 10
 Second, that Rule 3 of the Federal Rules of Civil Procedure applies rather than the filing mechanisms of the state law which provide that the action is filed when service is obtained.
 
 
 11
 Third, that service on foreign corporations, such as Masutoku Toy Factory Company and Masudaya Toy Company, Ltd., is completed by filing the process with the Secretary of State and that it is unnecessary to complete the substituted service on the foreign corporations.
 
 
 12
 Fourth, that the three-year Massachusetts statute of limitations applies as a result of the Oklahoma "borrowing statute" because the tort took place in Massachusetts.
 
 
 13
 The two plaintiffs are residents and citizens of Massachusetts. The toy was purchased in Oklahoma, a factor which brings Oklahoma into the case. A grandmother of the child made the purchase at a store in Oklahoma and mailed it back to Massachusetts as a present. There, as it was used by the boy, the injury in question was suffered. The allegation is, of course, that this toy train was defectively designed and manufactured by Masutoku and distributed and sold by Masudaya, Janco and T. G. & Y. The other salient facts will be revealed in the discussion which follows.
 
 I.
 
 14
 IS SERVICE OF PROCESS GOVERNED BY STATE LAW OR BY THE
 
 
 15
 FEDERAL RULE OF CIVIL PROCEDURE?
 
 
 16
 The question is does state or federal law provide the governing rule. If the state law applies, the action is barred. Application of federal law would have the contrary result.
 
 
 17
 On its face the jurisdiction seems tenuous because there is little in the record which sheds light on whether these Japanese corporations actually did business in Oklahoma. Moreover, the injury did not occur in Oklahoma. Undoubtedly the suit was filed there because of the sale having taken place in Oklahoma. This would have been on the theory that as a result of the purchase the matter was set in motion. Massachusetts would seem a less unlikely forum, but that is not germane to anything before us.
 
 
 18
 The Oklahoma statute which the court applied in dismissing the action is reported in Okl.Stat.Ann. tit. 12, § 97.[1] Its provisions are that the action shall be deemed commenced within the meaning of the article as to each defendant at the date the summons is served on him or on a codefendant who is a joint contractor or otherwise united in interest with him. Where service by publication is proper, the action shall be deemed commenced the date of the first publication. It provides also that an attempt to commence an action shall be deemed equivalent to the commencement thereof when the party faithfully, properly and diligently endeavors to procure a service, and that such attempt must be followed by the first publication or service of the summons if service is sought to be procured by mailing by receipt of certified mail containing summons within 60 days.
 
 
 19
 The attempted service on the Japanese residents here was on the Secretary of State. But actual service on defendants was not accomplished by mail within the 60 days required by § 97, Supra. If, of course, the Federal Rules of Civil Procedure applies to this, the filing in the clerk's office of the federal court would be the effective act.
 
 
 20
 Unfortunately for the plaintiffs herein, this court has recently considered the conflict between the Supreme Court cases, Ragan v. Merchants Transfer and Warehouse Co., Inc., 337 U.S. 530, 69 S.Ct. 1233, 93 L.Ed. 1520 (1949), and the Supreme Court's later decision in Hanna v. Plumer, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965), the two leading cases on this question. This court determined that it was compelled to uphold and follow the Ragan decision of the Supreme Court since Ragan originated in this Circuit, and for all intents and purposes it is the law of this Circuit until it is overruled. Walker v. Armco Steel Corp., 592 F.2d 1133 (10th Cir. 1979), and Lindsey v. Dayton Hudson Corporation, 592 F.2d 1118 (10th Cir. 1979), both reached the same conclusion, that is, that the state provision must apply. Therefore, the issue must be resolved against the plaintiffs.
 
 II.
 
 21
 WAS THE SERVICE OF PROCESS ON THE SECRETARY OF STATE OF
 
 
 22
 OKLAHOMA EFFECTIVE FOR THE PURPOSE OF OBTAINING JURISDICTION
 
 
 23
 OVER THE JAPANESE CORPORATIONS GIVEN THE FACT THAT THE
 
 
 24
 PROCESS WAS NOT MAILED BY THE SECRETARY OF STATE TO THE
 
 
 25
 DEFENDANTS IN JAPAN?
 
 
 26
 Appellants maintain that by delivering the summons and complaint to the Secretary of State pursuant to Oklahoma Stat.Ann. tit. 18, § 1.204a[2], the action was effectively commenced. By doing so, the argument goes, the service was complete within the sixty days provided by Okl.Stat.Ann. tit. 12, § 97.
 
 
 27
 Unquestionably the Secretary of State was served within the 60-day period which is prescribed by the Oklahoma statute (§ 97, Supra ). However, here is an additional problem, that is, whether the statute must, as it fails to do, require the mailing of process by the Secretary of State so as to give actual notice to the out-of-state defendants.
 
 
 28
 Appellants argue that the trial court erred in determining that the appellees, Japanese manufacturers, were not doing business within the State of Oklahoma. The issue was whether the one act of selling constituted doing business and the trial court concluded that it did not. The appellees listed the usual negatives, which are brought forward in this kind of a case, as to their doing business in state.
 
 
 29
 In assessing this issue it is to be noted that the Oklahoma Supreme Court has taken a liberal approach to the doing business concept and has equated it with the minimum contacts test of International Shoe v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). See Marathon Battery Company v. Kilpatrick, 418 P.2d 900 (Okl.1965), which holds that where a corporation is alleged (by the plaintiff) to be doing business in Oklahoma but is not domesticated nor has an appointed agent for service, the least degree of doing business is sufficient. See 418 P.2d 907.
 
 
 30
 Another case, Sweeney Company v. Colorado Interstate Gas Co., 429 P.2d 759 (Okl.1967), ruled a single or occasional transaction to be sufficient to satisfy the minimum standard of federal due process. See 429 P.2d at 762.
 
 
 31
 We have also examined Winston Industries, Inc. v. District Court, Seventh Judicial District, Oklahoma County, 560 P.2d 572 (Okl.1977), which is generally to the same effect (although a long-arm ruling).
 
 
 32
 However, it is idle to determine whether any single transaction in the present context constitutes doing business within the statute in view of our conclusion that the statute itself is deficient.
 
 
 33
 While Okl.Stat.Ann. tit. 18, § 1.204a, Supra, provides for service of process on the Secretary of State in the doing business fact situation above discussed, it does not make provision for giving actual notice by use of registered mail. Thus then, this completing step in substituted service is not a requirement of the statute.
 
 
 34
 The Supreme Court has had occasion to consider this issue in Wuchter v. Pizzutti, 276 U.S. 13, 48 S.Ct. 259, 72 L.Ed. 446 (1928). In Wuchter, a statute of New Jersey provided that in actions by residents of states against non-residents for personal injuries resulting from operations of motor vehicles on the highways, service could be made on the Secretary of State as their (the defendant's) agent. The statute there was similar to that which is before us in that it contained no requirement for providing actual notice. The Court found that it thus lacked due process of law and was invalid. The Court went on to say that the purported service could not be valid even if service were given outside of the state by mail or otherwise since it was not required by statute. The Court said:
 
 
 35
 But it is said that the defendant here had actual notice by service out of New Jersey in Pennsylvania. He did not, however, appear in the cause and such notice was not required by the statute. Not having been directed by the statute it can not, therefore, supply constitutional validity to the statute or to service under it. * * * For these reasons, we think that the statute of New Jersey under consideration does not make provision for communication to the proposed defendant, such as to create reasonable probability that he would be made aware of the bringing of the suit.
 
 
 36
 276 U.S. at 24-25, 48 S.Ct. at 262.
 
 
 37
 The New Jersey statute in Wuchter cannot be distinguished from that which we have before us and, therefore, we do not have a choice which would allow us to uphold the provision.
 
 
 38
 The failure of § 1.204a, Supra, to require actual notice, at least by mail, renders it impossible to conclude that personal jurisdiction over the Japanese, defendants-appellees, was valid.
 
 III.
 
 39
 THE CONTENTION THAT THE OKLAHOMA "BORROWING" LAW AUTHORIZES
 
 
 40
 THE APPLICATION OF THE MASSACHUSETTS STATUTE OF
 
 LIMITATIONS RATHER THAN THAT OF OKLAHOMA
 
 41
 Appellants have effectively argued that under the Oklahoma "borrowing statute," Okl.Stat.Ann. tit. 12, § 105, the period of limitation applicable to a claim accruing outside of Oklahoma is that prescribed either by the law of the place where the claim accrues or the law of Oklahoma, whichever has the most significant relationship to the claim.
 
 
 42
 The Massachusetts statute in question is a long-arm statute. In order, however, to borrow a statute, it must appear under Oklahoma law that defendant could have been summoned in Massachusetts. This, in turn, would require that he legally did or solicited business or engaged in any other persistent course of conduct, etc.
 
 
 43
 We can only say that this inquiry has a theoretical character in view of our conclusion that the Oklahoma substituted service statute is itself fatally deficient.
 
 IV.
 
 44
 THE EFFECT, IF ANY, OF THE MINORITY OF JAMES D. ROSE
 
 
 45
 This is a matter that the trial court did not consider. The Oklahoma statute, tit. 12, § 96, protects an injured person who is under legal disability. This statute has been construed as being applicable to minors. See Walker v. Pacific Basin Trading Co., 536 F.2d 344, 347 n.1 (10th Cir. 1976); Crockett v. Root, 194 Okl. 3, 146 P.2d 555 (1943); Hinton v. Trout,68 Okl. 154, 172 P. 450 (1918).
 
 
 46
 Here again we cannot answer the question posed in the abstract, and in view of our having determined that the defendants-appellees are not validly before the court, it is inappropriate to decide this question.
 
 
 47
 The judgment of the district court is affirmed.
 
 
 
 *
 Of the United States Court of Customs and Patent Appeals, Washington, D. C., sitting by designation
 
 
 [1]
 That statute reads as follows:
 An action shall be deemed commenced, within the meaning of this article, as to each defendant, at the date of the summons which is served on him, or on a codefendant, who is a joint contractor or otherwise united in interest with him. Where service by publication is proper, the action shall be deemed commenced at the date of the first publication. An attempt to commence an action shall be deemed equivalent to the commencement thereof, within the meaning of this article, when the party faithfully, properly and diligently endeavors to procure a service; but such attempt must be followed by the first publication or service of the summons, or if service is sought to be procured by mailing, by a receipt of certified mail containing summons, within sixty (60) days. (footnote omitted.)
 This statute is a combination provision which governs a variety of things: when the action is filed; how process is served; and limitation of actions. Needless to say, its impact tends more in the direction of the jettisoning of cases and docket clearing rather than administering of justice.
 
 
 [2]
 This section provides:
 In all cases where a cause of action has accrued or shall accrue to any person by reason of a foreign corporation doing business in this state or having done business in this state or while a foreign corporation was doing business within this state and such foreign corporation has no registered agent in this state upon whom service of summons or other process may be had, an action may be filed against such foreign corporation in any county in the state and service of summons or other process may be had upon the Secretary of State, and such service shall be sufficient to give jurisdiction of the person to any court in this state having jurisdiction of the subject matter whether sitting in the county where the Secretary of State is served or elsewhere in the state.