977 F.2d 595
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Eric CRABTREE and Crabtree Corporation, d/b/a Crabtree
Corp., a Colorado corporation, Plaintiffs-Appellants,
v.
KIEWIT WESTERN COMPANY, a Delaware corporation authorized to
do business in Colorado; and Kiewit Construction Company, a
Delaware corporation authorized to do business in Colorado,
Defendants-Appellees.
 No. 91-1160.
 United States Court of Appeals, Tenth Circuit.
 Sept. 30, 1992.
 
 Before LOGAN and STEPHEN H. ANDERSON, Circuit Judges, and THEIS, District Judge.*
 ORDER AND JUDGMENT**
 LOGAN, Circuit Judge.
 
 
 1
 Plaintiffs Crabtree Corporation and Eric Crabtree (hereinafter Crabtree) appeal the grant of summary judgment dismissing their claims under 42 U.S.C. §§ 1981 and 1982 against defendants Kiewit Western Company and Kiewit Construction Company (hereinafter Kiewit).
 
 
 2
 Crabtree Corporation was a certified MBE/DBE (minority/disadvantaged business enterprise) under the Colorado MBE program governing contracts between highway construction companies and the Colorado Department of Highways (CDOH). From 1983 until it went out of business in 1986, Crabtree performed traffic control services and guardrail installation as a subcontractor for several CDOH projects. Eric Crabtree, who is black, was the sole shareholder in Crabtree Corporation.
 
 
 3
 This case arises out of two subcontracts Crabtree entered into with Kiewit in February and March of 1986, the Trout Creek project and the Cameo (also known as Palisades) project. These contracts were executed using Kiewit's standard subcontract form, which called for bonding by the subcontractor. After assuring Kiewit that bonds were forthcoming, Crabtree began performing on both contracts, with the understanding that there would be no payment for work performed until bond was obtained. Subsequently, Crabtree discovered that it was unable to bond and requested that Kiewit waive bond and pay for the work already performed. Kiewit refused.
 
 
 4
 Because the Trout Creek project was near completion when Crabtree requested the waiver, Kiewit agreed to put Crabtree's workers on their payroll to finish the job. However, because the Cameo project was several months from completion Kiewit terminated Crabtree and hired a Minority Business Enterprise/Women's Business Enterprise (WBE) subcontractor firm owned by a white woman as a replacement. Kiewit never paid Crabtree for the work it did, allegedly because of back charges owed it by Crabtree. Crabtree went out of business later that year.
 
 
 5
 Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, admissions, and affidavits "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." A court deciding a motion for summary judgment will read the pleadings in a light most favorable to the non-moving party. McKay v. Hammock, 730 F.2d 1367, 1371 (10th Cir.1984) (en banc). However, the non-moving party can not get to a jury simply by relying on allegations "without 'any significant probative evidence tending to support the complaint.' " Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986) (quoting First National Bank of Arizona v. Cities Service Co., 391 U.S. 253 (1968)). The party opposing the motion "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).
 
 
 6
 Crabtree alleges that it was routine practice for Kiewit to waive the bonding requirement when subcontractors were unable to obtain bond, and that Kiewit's refusal to waive bond for Crabtree was a discriminatory contractual term in violation of 42 U.S.C. § 1981. Although § 1981 has recently been amended to encompass post-formation contractual conduct, Civil Rights Act of 1991, Pub.L. No. 102-166, 105 Stat. 1071 (1991), we need not decide whether the Civil Rights Act of 1991 applies retroactively since we hold that Crabtree's claim fails even under an expansive reading of § 1981.
 
 
 7
 The framework for deciding § 1981 claims is the same as the scheme of proof developed under Title VII. Patterson v. McLean Credit Union, 491 U.S. 164, 186 (1989). The plaintiff must prove that he belongs to a racial minority, that he applied and was qualified for an available position, that he was rejected, and that defendant continued to seek applicants for that position. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). Once the plaintiff makes a prima facie case, the defendant has the opportunity "to articulate some legitimate, nondiscriminatory reason for the ... rejection," id., and the plaintiff may rebut that reason by showing that it is pretextual. Id. at 804.
 
 
 8
 For purposes of this appeal we assume that 42 U.S.C. § 1981 applies in all respects, even though the contracting plaintiff is a corporation (wholly owned by a black man), an independent contractor, and the alleged discriminatory action is the failure to modify a contract. We also assume that the WBE replacement sub-contractor is not to be treated as a minority. So construed, Crabtree arguably makes a prima facie case. Crabtree Corporation was a certified MBE, qualified to perform satisfactory work of the sort Kiewit required. After failing to make bond, Crabtree was terminated and replaced with a white-owned company of similar qualifications. Kiewit, however, articulated a legitimate, non-discriminatory reason for the termination--Crabtree's failure to make the bond required by the contract, thereby exposing Kiewit to the consequences of Crabtree's failure to complete the contract.
 
 
 9
 This places the burden upon Crabtree to show pretext. Although the district court granted Kiewit summary judgment on different grounds, we can affirm on any basis justified by the record, particularly when, as here, the alternative ground has been fully briefed in our court. See Lindsey v. Dayton-Hudson Corp., 592 F.2d 1118, 1124 (10th Cir.1979), cert. denied, 444 U.S. 856 (1979). Crabtree's efforts at showing pretext are insufficient to withstand summary judgment.
 
 
 10
 Crabtree relies principally upon a statistical comparison of the numbers of bonds Kiewit required and those it waived. Although the sample is not large, for the years available (1985-86) Kiewit waived bond more frequently for MBE's and DBE's than for white-owned contractors. Of the two black owned businesses (including Crabtree) that Kiewit contracted with during that time, Kiewit waived bond once. Kiewit was able to present business justifications for the situations in which it did waive bond. These reasons included contract amounts too small to require bond, work for which it was industry practice not to require bond, work that involved little risk of loss to Kiewit (such as hauling, which Kiewit could have done itself if need be), and work performed by subcontractors who were already bonded for other projects or who had bonded and performed satisfactorily for Kiewit in the past. Significant in defeating Crabtree's claim of pretext is the fact that in 1983 Kiewit's predecessor company, PKS, did waive bond for Crabtree.
 
 
 11
 Crabtree also argues generally that Kiewit did not comply with the Colorado MBE program governing state highway construction contracts. The only facts in this voluminous record are to the contrary. The CDOH made specific findings that Kiewit complied with all of its requirements in connection with the termination of Crabtree and the selection of the replacement subcontractor. It required Kiewit to contact other MBE firms for bids when Crabtree was terminated, and when no MBE firm bid it permitted the contract to be awarded to a WBE firm. We can discern no facts from this record showing a racial-based animus on the part of Kiewit.
 
 
 12
 What emerges from our examination of the excerpted depositions is the picture of a large company that flexes its economic muscle, and seeks to maximize its own profits and secure for itself as much as is possible of every road contract it makes with the state. Kiewit certainly did not go out of its way to assist Crabtree in overcoming its financial difficulties; but Kiewit's motives appear to be based not on racial animus but on fear that if Kiewit paid Crabtree before it made bond Kiewit might have to pay a second time to remove liens filed by Crabtree's suppliers and, perhaps, employees. Crabtree was in economic trouble, and Kiewit was not going to help bail it out. But there is no evidence in the record that the reason Kiewit would not help Crabtree was because of race. Indeed, having discharged Crabtree, Kiewit was required under the MBE program to attempt to replace Crabtree with another MBE. Crabtree has not demonstrated there is any genuine issue of material fact warranting submission of the § 1981 claim to the jury.
 
 
 13
 The failure of the record to show evidence of racial discrimination also disposes of the 42 U.S.C. § 1982 claim. Section 1982 provides: "All citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property." Even if we were to assume that the contract Crabtree had with Kiewit, and the request for its modification, fall within the sweep of § 1982 property rights, Crabtree loses. Crabtree had its contract with Kiewit on which it could sue or be sued. There is no evidence that Kiewit's refusal to waive the bonding requirement was based on race. Therefore Crabtree cannot argue he did not enjoy the same right in property as white citizens.
 
 
 14
 AFFIRMED.
 
 
 
 *
 The Honorable Frank G. Theis, Senior United States District Judge for the District of Kansas, sitting by designation
 
 
 **
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3